Frances D. SHANNON, Appellant,

v.

FROST NATIONAL BANK OF SAN ANTONIO, Appellee.

No. 15404.

Court of Civil Appeals of Texas, San Antonio.

Dec. 31, 1975.

Rehearing Denied March 3, 1976.

Morriss, Boatwright, Lewis & Davis, San Antonio, for appellant.

George H. Spencer, Clemens, Weiss, Spencer & Welmaker, San Antonio, for appellee.

CADENA, Justice.

Plaintiff, Frances D. Shannon, filed this suit for damages resulting from alleged breach of fiduciary duties by defendant, Frost National Bank of San Antonio, trustee under a written inter vivos revocable trust. Plaintiff, trustor and beneficiary under the trust, appeals from the granting of an instructed verdict in favor of defendant.

In this opinion defendant, Frost National Bank, will be referred to as "Bank."

Prior to September 2, 1971, plaintiff had in her possession the sum of $100,000.00 in cash. She discussed with Bank's officials the possibility of creating a trust, with plaintiff as trustor and beneficiary, and Bank as trustee. One of Bank's officials, on learning that plaintiff did not have an attorney, referred her to a law firm for the purpose of having the necessary instrument prepared. A member of the law firm prepared the trust instrument, and on September 2, 1971, plaintiff and Bank executed the trust agreement.

Plaintiff alleged that at various times between September 2, 1971, and March 19, 1973, she attempted to exercise her right under the trust agreement to withdraw funds from the trust estate. According to the petition, Bank, instead of delivering her own trust funds to plaintiff, borrowed the amount requested by plaintiff from itself, executing a note as trustee, payable to itself, for the amount of the requested withdrawal, plus interest. Bank would then deliver to plaintiff the amount it borrowed from itself. When the notes thus executed became due, Bank would pay to itself the principal amount plus interest. Plaintiff alleged that such procedures constituted "self-dealing" on the part of Bank and violations of Bank's fiduciary duties to plaintiff. These "loans" totalled $40,000.00.

Plaintiff further alleged that on March 19, 1973, she exercised the right, reserved by her in the trust instrument, to revoke the trust in its entirety and demanded that Bank deliver to her all trust funds then held by it. She alleged that Bank wrongfully withheld such trust fund from plaintiff until June 18, 1973, at which time Bank delivered to her the sum of $51,560.21. This amount, according to plaintiff, was less than the amount in such trust on March 19, 1973, the date of revocation.

Plaintiff sought recovery of all interest paid by Bank to itself in connection with the repayment of loans; recovery of the correct amount in the trust on March 19, 1973, less the amount delivered to plaintiff on June 18, 1973; recovery of the amount paid to itself by Bank as compensation for acting as trustee; and for recovery of reasonable attorney's fees. She also sought to compel Bank to render a verified accounting of its management of the trust funds.

Bank's answer contained a general denial and the following allegations:

1. During the existence of the trust Bank made complete and accurate periodic accountings to plaintiff, and, upon termination of the trust it made a full and final accounting to plaintiff and distributed to her the remainder of the trust estate.

2. As authorized by the trust agreement, the Texas Trust Act, and applicable federal laws and regulations applicable to national banks, Bank invested the trust funds in a common stock fund. Plaintiff was advised of such investment and, by means of periodic accountings during the existence of the trust, of all transactions relating to such investment.

3. The loans of which plaintiff complains in her petition were made with her full knowledge and consent. The exact terms of each loan and of all repayments of principal and payments of interest were fully reported to plaintiff. Such loans were lawfully and fairly made and did not constitute a violation of Bank's duties as fiduciary.

4. When it received notice of plaintiff's decision to terminate the trust, the trust money in question was withdrawn from the common stock fund by Bank at the earliest date such withdrawal could lawfully be made pursuant to federal laws and regulations, and all trust funds then remaining were promptly delivered to plaintiff.

In determining whether defendant was entitled to an instructed verdict, we must accept as true all evidence which, when liberally construed in favor of plaintiff, tends to support findings as to the existence of facts on which plaintiff relies, or the nonexistence of facts relied on by defendant. In thus evaluating the evidence, the Court must indulge every inference which can reasonably be drawn in favor of plaintiff, discarding all contradictory evidence favorable to defendant. 3 McDonald, Texas Civil Practice Sec. 11.28.2, pp. 235–236 (1970 rev.). Our recital of the "facts" of this case will, under this approach, necessarily be the result of a selective screening of the evidence.

At the time the trust was created, plaintiff was unable to decide whether her money should be invested for "income" or "growth" purposes and Bank, therefore, initially invested the funds in United States Treasury bills. Shortly thereafter, plaintiff told Bank that her income was sufficient to defray her ordinary living expenses and that the money should be invested in order to realize "growth" rather than income. However, she told Bank that it would be necessary for her, from time to time, to withdraw funds for such purposes as payment of income taxes, purchase of a car, and to meet "emergencies" which might arise.

Bank then converted the Treasury bills into cash and invested $99,392.02 in its common stock fund on December 14, 1971, after placing $599.08 in a saving account. Plaintiff testified that she was not told that her money would be invested in Bank's common stock fund; that she merely believed her money was invested in the "stock market"; and that she did not understand the statements periodically furnished to her by Bank reflecting the common stock fund investment.

From time to time, plaintiff found it necessary to obtain cash in order to meet certain expenses. When she first sought to withdraw part of her funds, Bank's official who was handling her account told her that, since her money was earning interest at the rate of 11¼% annually, the best course to follow would be to borrow money at a lower rate and repay it subsequently. She agreed, and Bank's official then executed, on behalf of the trust, a note payable to Bank in 90 days. The commercial loan department of Bank made the loan and the amount requested by plaintiff was then delivered to her. The same procedure was followed on subsequent occasions when plaintiff made known her need for additional money. The notes in question bore interest at a rate of approximately 7¼% annually. When the notes matured, money was drawn from the trust estate for the purpose

of paying to Bank the principal and interest on such notes.

At no time was plaintiff told that it was impossible for her to withdraw any part of the trust estate at the time that she requested cash. The only explanation given her for following the borrowing procedure described in the preceding paragraph was that, since her money was earning in excess of 11% annually, it would be in her best interest to borrow money at a lower interest rate rather than withdraw funds from the trust estate.

On March 19, 1973, by telephone, and on March 20, by letter, plaintiff informed Bank that she wished to terminate the trust. By letter to plaintiff dated March 20, 1973, Bank informed plaintiff that since the trust funds had been invested in Bank's common stock fund, and since the " . . . Common Stock Fund . . . is valued quarterly at the end of February, May, August and November," funds would not be available for distribution to plaintiff until " . . . shortly after June 15, 1973." The letter recited that the value of the trust estate was then $58,124.65. This amount represented the original investment plus earnings, less certain deductions, including withdrawals which had been made from the common stock fund in order to repay the notes representing money lent to the trust by Bank.

On June 18, 1973, Bank paid to plaintiff, by check, the amount of $51,560.21, representing the value of the trust estate as of the end of May 1973. The decrease in value between March 20, 1973, and June 18, 1973, the date of distribution, resulted from a decrease in the value of the stocks and securities held by Bank in the common stock fund.

The Uniform Common Trust Fund Act, adopted in Texas in 1947 and incorporated into the Texas Trust Act in 1969 (Tex.Rev. Civ.Stat.Ann. arts. 7425b–48, 7425b–48a), permits any bank or trust company qualified to act as a fiduciary in Texas to establish a common trust fund for the purpose of furnishing investment to itself as fiduciary, or to itself and others as cofiduciaries, and to invest funds lawfully held by it in such common trust fund if such investment is not prohibited by the instrument creating the fiduciary relationship. Applicable federal regulations permit national banks to establish and maintain such common trust funds, designated in the regulations sometimes as "collective investment" funds. 12 CFR § 9.18, pp. 208–11 (1975).

The applicable regulation relied on by Bank is § 9.18(4) which reads as follows:

Not less frequently than once during each period of 3 months a bank administering a collective investment fund shall determine the value of the assets in the fund as of the date set for the valuation of assets. No participation shall be admitted to or withdrawn from the fund except (i) on the basis of such valuation and (ii) as of such valuation date. No participation shall be admitted to or withdrawn from the fund unless a written request for or notice of intention of taking such action shall have been entered on or before the valuation date in the fiduciary records of the bank and approved in such manner as the board of directors shall prescribe. No requests or notice may be canceled or countermanded after the valuation date.

The common trust fund maintained by Bank was evaluated every three months at the end of February, May, August, and November. Therefore, since plaintiff's request for termination of the trust was not received by Bank until March 19, which was after the February valuation date, it was impossible for Bank to withdraw plaintiff's participation in the common trust fund until the next evaluation date at the end of May.

Under the trust agreement, Bank was granted all " . . . rights, privileges, and powers now or hereafter granted Trustees under the Texas Trust Act and the laws of Texas." This, of course, includes the power under the Uniform Common

Trust Fund Act, to establish and maintain a common trust fund and to invest in such fund money held by Bank as trustee.

In the agreement plaintiff reserved the right to revoke the trust entirely and "to receive from the Trustee all of the Trust Estate remaining after payment, or provision for payment, of all expenses connected with the administration of this Trust to the date of revocation." She also reserved the right to withdraw all or any part of the trust estate from time to time.

It is plaintiff's contention that by investing her money in the common trust fund Bank incapacitated itself from complying with its duty to deliver to her, upon her revocation of the trust, all of the trust estate remaining after payment, or provision for payment, of all expenses connected with the administration of the trust at the date of revocation.

■ We do not agree that the free right of revocation retained by plaintiff can be construed as a prohibition "in the instrument creating the fiduciary relationship" against investment of her trust funds in the common trust by Bank. Under our Trust Act, every trust is revocable by the trustor during his lifetime, " . . . unless expressly made irrevocable by the terms of the instrument . . ." creating the trust or by a supplement or amendment to such instrument. Tex.Rev.Civ.Stat.Ann. arts. 7425b–41. If the existence of a power of revocation has the effect of prohibiting investment by a fiduciary bank of trust funds in common trust funds, the result would be to limit such investment to cases involving irrevocable trust. Therefore, the investment by Bank of plaintiff's funds in the common trust fund did not constitute a breach by Bank of its fiduciary duties.

■ However, it is well settled that a trustee owes a duty to give to the beneficiary upon request complete and accurate information as to the administration of the trust. 2 Scott, Trusts § 173 (3d. ed. 1967). Here, there was no specific request for information by plaintiff concerning the na-

ture of the investment of the trust funds made by Bank. However, her initial request to withdraw funds from the trust estate clearly indicated that she was unaware of the restrictions on withdrawal resulting from investment in the common trust fund. Bank, instead of communicating the actual facts to plaintiff, chose to tell her that prudent management of the trust estate dictated that she should borrow money from Bank instead of withdrawing a portion of the trust estate. Under all the circumstances, this explanation had the effect of concealing from plaintiff vital information concerning her rights in the trust fund. The explanation actually furnished plaintiff, while, perhaps, constituting sound advice, would support a factual conclusion that the Bank failed, under the circumstances, to make a frank and dull disclosure of all the information which it had. 5 Bogert, Trusts and Trustees § 544, p. 621 (2d ed. 1960).

■ Here, the result of the initial failure to make a full disclosure resulted in a series of loans by Bank, as a lending institution, to itself, as trustee, with both principal and interest to be paid out of funds of the trust estate. The net result, a benefit to Bank in its role as a lending institution. Stated differently, the situation is one in which the fiduciary suggested that the trust borrow from the fiduciary, and, in making such suggestion, withheld facts of which the beneficiary was ignorant. It cannot be said that, as a matter of law, under the facts and circumstances of this case as reflected in plaintiff's testimony, Bank did not breach its duty to deal fairly with plaintiff and to communicate to her all material facts in connection with the loan transactions which Bank, as trustee, knew. 1 Restatement, Trusts 2d, § 170(2), § 173, comment (d)(1959).

Since the evidence, when viewed in the light most favorable to plaintiff, the opponent of the motion for instructed verdict, was sufficient to raise an issue of fact, the trial court erred in instructing a verdict in favor of defendant.

The judgment of the trial court is reversed and the cause is remanded for trial.