CORPUS CHRISTI BANK & TRUST, Appellant,

v.

Walter James ROBERTS et al., Appellees.

No. 1375.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 30, 1979.

Rehearing Denied Sept. 21, 1979.

Ronald L. Chachere, William R. Anderson, Jr., Sorrell, Anderson & Sorrell, Corpus Christi, for appellant.

C. Edwin Prichard, Jr., Prichard, Peeler & Cartwright, Corpus Christi, for appellees.

## OPINION

NYE, Chief Justice.

This is a suit brought by the beneficiaries of an express trust, Walter James Roberts and Willie Joseph Roberts, against the Corpus Christi Bank & Trust, executor of Dudley Jones, trustee, for an accounting; for the recovery of certain trust monies allegedly spent by the trustee in contravention of the trust instrument; for the recovery of other money belonging to the trust which the trustee had allegedly not paid to the beneficiaries or accounted for its absence; and for damages resulting from the alleged failure of the trustee to properly maintain and repair the trust properties. By agreement of the parties, three of the beneficiaries' claims were tried to the trial court and the remainder were submitted to a jury on special issues. The trial judge and the jury found all issues material to this appeal in favor of the beneficiaries. Thereafter, the trial judge entered a judg-ment awarding them the sum of $76,207.47. The executor of the Trustee appeals.

The trust in question was created by a written instrument executed on February 18, 1949, by Lillie Roxana Colvin, the paternal grandmother of the beneficiaries, wherein she conveyed certain rental properties to Dudley Jones, trustee, for him to manage and rent. Under the terms of the trust, Mrs. Colvin was entitled to receive during her lifetime such amounts from the annual net income as she might request from the trustee, based upon an annual accounting. The trust, by its own terms, terminated on January 29, 1972, the date upon which the beneficiaries, twin brothers, became thirty years of age. At the end of the trust, the trustee was to deed the trust properties to the beneficiaries and to transfer the remaining trust properties to the beneficiaries in equal portions.

When the term of the trust ended, the beneficiaries requested the trustee to transfer the trust properties and money on hand to them. On March 6, 1972, the trustee conveyed some of the properties to the beneficiaries, but did not transfer any of the trust income remaining on hand. After further demands, the trustee did, on May 16, 1972, assign to the beneficiaries the bank accounts and savings certificates representing the sum of $71,679.94. The trustee refused, however, the repeated request to render an accounting of the trust proceeds to the beneficiaries.

The beneficiaries filed suit against the trustee requesting a court-ordered accounting and damages for diminished value of the trust properties allegedly caused by the trustee's failure to make repairs and improvements as required by the terms of the trust instrument. The trustee died prior to trial, and his executor, Corpus Christi Bank and Trust, was then substituted as party defendant. Thereafter, the beneficiaries filed a motion seeking to compel the Bank, on behalf of the trustee, to render a full accounting. In addition, the beneficiaries attempted to utilize interrogatories to discover information concerning checking accounts the trustee maintained with the

Bank during the duration of the trust. The trial court denied the motion to compel an accounting on the basis that the records of the estate were not adequate to produce an accounting and that the records of the Bank were on microfilm and it would be too expensive to reproduce them. The trial court's order also limited the scope of the beneficiaries' discovery by refusing to compel the Bank to search its own records to complete the answers.

The record indicates that on July 5, 1977, the beneficiaries reurged their motion to require the Bank to render an accounting on behalf of the trustee. The trial court granted this subsequent motion. On July 7, 1977, during a hearing on whether or not to appoint a Master in Chancery, the Bank tendered an accounting of the trust for the years 1949 through 1972. Two months thereafter, the beneficiaries filed a "Motion to Require a Full and Complete Accounting" which alleged that the tendered accounting could not be considered a full and complete accounting because: 1) there were no supporting vouchers, bills or statements justifying any of the expenditures; 2) there were missing bank statements and cancelled checks in each and every year of the trust; 3) that the total disbursements for each year shown by the Bank's tendered accounting exceeded the total sum of expenditures evidenced by the checks by an amount of $30,532.60; and 4) that the accounting failed to show all of the income which came into the trust. During a subsequent pretrial hearing, the Bank tendered an amended accounting which made several changes in the accounting as it was originally tendered.

The case ultimately proceeded to trial on the beneficiaries' second amended petition in which they renewed their objections to the adequacy of the Bank's accounting and reurged their request that the trial court appoint a Master in Chancery to reconstruct an accounting. In addition (and relevant to this appeal), they alleged, in substance: that the trustee wrongfully paid to Neyland Realty Company (Neyland) the sum of $17,-114.47 during the term of the trust in payment for Neyland's services of leasing the trust properties and for collecting rents generated by the trust properties when the trust instrument expressly imposed this specific duty upon the trustee; that the trustee, in contravention of the trust provisions, failed to make all necessary repairs to maintain and preserve the trust properties which caused such properties to be diminished in value to the extent of $33,696.00; that the trustee had transferred to the beneficiaries only the sum of $71,679.94 out of the total income of $223,653.66 which he had collected; that the trustee had failed to pay them or account to them for the difference in the two sums; and that such difference had either been commingled with monies belonging to the trustee's personal estate or had been expended by him without authority under the terms of the trust. In accordance with these allegations, the beneficiaries prayed for the sum of $60,117.57 (1 and 2 above) "together with such sums the (Bank) is unable to fully and completely account for. . . . "

The Bank filed a general denial and affirmatively pled defenses of limitations, laches, estoppel, waiver, and accord and satisfaction. At the conclusion of the testimony, both parties agreed to submit to the trial judge for determination the beneficiaries' claim that they should recover the sum of $17,114.47, which the trustee had paid to Neyland for Neyland's services in collecting the rents from the trust properties. The court decided this issue in favor of the beneficiaries.[1] In response to special issues, the jury found, in relevant parts: 1) that the trustee failed to maintain or repair the trust property as he was required to do by the trust instrument; 2) that such failure

1. Two other claims, not relevant to this appeal, were submitted to be decided by the trial judge: 1) that the beneficiaries should recover $643.00 which the trustee paid to himself as a "real estate commission" upon the sale of certain rental property belonging to the trust; and 2) that the beneficiaries were not entitled to recover the sum of $9,307.10, the amount by which they alleged the trustee's compensation fee exceeded the compensation otherwise allowed under the terms of the trust instrument. These claims are not at issue on appeal.

resulted in a decrease in the value of the trust property; 3) that the amount of decrease in value was $32,000.00; 4) that the trustee failed to pay and transfer to the beneficiaries all of the monies to which they were entitled under the trust by 5) an amount equal to $26,450.00. In accordance with the jury's answers to these special issues and in accordance with the judge's determination as to the issues which were submitted to him alone, the court entered a judgment awarding the beneficiaries the sum of $76,207.47.

The Bank, on behalf of the trustee, appeals, bringing forward eleven points of error for our consideration. In point of error number one, the Bank contends that the trial court erred in rendering a judgment which awarded the beneficiaries the recovery of $17,114.47 which represented fees paid by the trustee to W. T. Neyland Realty Company for Neyland's services rendered in leasing the trust property and in collecting weekly rentals from tenants occupying the trust properties. This point of error concerns the question of the trustee's power to delegate certain managerial duties to a third person and to compensate such person from the trust funds at the same time he (the trustee) received and retained full compensation authorized under the trust provisions for performing the duties as trustee.

No findings of fact concerning this portion of the judgment were filed or requested. As a result, we must presume on appeal that the trial court found every fact necessary to sustain this portion of the judgment if such factual propositions were raised by the pleadings and supported by the evidence. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950). The judgment will be affirmed on any theory that finds support in the evidence. *Seaman v. Seaman*, 425 S.W.2d 339 (Tex.Sup.1968); *Bishop v. Bishop*, 359 S.W.2d 869 (Tex.Sup. 1962); *City of Corpus Christi v. Gilley*, 458 S.W.2d 124 (Tex.Civ.App.—Corpus Christi 1970, n.r.e.). The relevant provisions of the trust instrument provide as follows:

"(P)rovided, further, that *this conveyance confers, grants*, and gives unto the said Trustee, . . . herein, *only such right, powers*, duties, and privileges *as are herein contained*, to-wit:

\* \* \* \* \* \*

### III.

(Trustee shall not have the right to transfer or encumber the trust property). Provided, however, the right and power is given and granted to the trustee, and his successors, to lease and/or rent the said premises, or any part thereof, for a term not to exceed ten years . . .

### IV.

During the term of this trust, the Trustee shall have the right and power, and *the duty is hereby imposed upon him, to rent or to lease said trust properties*, or such portion thereof as he may, in the exercise of reasonable diligence, be able to rent or to lease to others; and *the terms and provisions, including the amount or amounts of rent to be paid, of any such contract of rent, hire, or lease, shall be within the sole discretion of said Trustee* during the time he is acting as such. . . . And said trustee shall have the right, power, and the *duty to receive and collect any and all rents, monies or other things of value as income* from said trust property, and to sue for the same in his own name . . . and said Trustee shall have the right to manage and control such trust properties in such manner as to him may be advisable. (Emphasis added.)

\* \* \* \* \* \*

### V.

The said Trustee, while acting as such, shall be entitled to compensation for his services rendered pursuant to this trust instrument. And it is hereby specifically provided that such compensation shall be a sum of money equal to ⅓ of the net income from said trust properties.

\* \* \* \* \* \*

## VII.

The monies, and income, collected and received from said trust properties, and the management, control, rent, and lease thereof, shall be disbursed and expended by the Trustee in the following order of precedence:

(1) (repairs and taxes).

(2) To maintain and preserve the trust properties, and pay the operating expenses which are reasonably necessary to the good management, control, renting, leasing, or hiring of said trust properties, including the services of accountants and attorneys at law, when, in the opinion of said trustee, such services may be considered convenient or advisable, and including payment of any legal claims or judgments which may be presented to, or rendered against, such trustee in his capacity as such.

(3) To pay unto the said trustee his compensation as hereinabove provided."

The Texas Trust Act, Tex.Rev.Civ.Stat. Ann. Article 7425b–25 (1960) governs the powers, duties and responsibilities of trustees of an express trust in the absence of contrary or limiting provisions in the trust instrument or in a subsequent order or decree of a court. Absent such limitations, subparagraph H of this article grants to the trustee the authority to "(e)mploy attorneys, accountants, agents, and brokers reasonably necessary in the administration of the trust estate; . . . " Appellant argues that the trust instrument contains no contrary or limiting provisions which would preclude the trustee from hiring and paying Neyland to lease the trust properties and collect rents therefrom. Appellant also argues that the power to hire a third party to lease the trust property was expressly granted in paragraph VII(2) of the trust instrument above quoted, which authorized the trustee "to pay the operating expenses which are reasonably necessary to the good management, control, renting, leasing, or hiring of said trust properties . . . " The power to hire a third person to collect the rentals, Appellant contends, is impliedly

granted and reasonably incidental to the express power to hire a third person to lease the property. These are essentially the same arguments implicitly rejected by the trial court when rendering the judgment awarding the beneficiaries a sum equal to the amount the trustee had paid to Neyland for its leasing and rental collection services.

■ We do not believe that the express terms of the trust instrument, which neither party alleged were vague or ambiguous, warrant the broad interpretation that the Bank suggests. The trust instrument expressly limited the scope of the trustee's powers to "only" those powers "herein contained." Under the terms of the trust, the duty to lease the trust property is explicitly imposed upon the trustee. The trust instrument stipulates that the terms and provisions of any such leases, including the appropriate sum to impose as the rental fee, were "vested within the sole discretion of (the) trustee." Nowhere in the trust is it stated that these particular powers or duties of the trustee could be exercised by the trustee or, at the trustee's option, by his agent or by his employee.

Even if we were to accept the Bank's argument that the trust instrument expressly authorized the trustee to employ an agent to lease the trust properties, the trial judge could have reached the same result for other reasons. Neither the Texas Trust Act nor the terms of the trust instrument in question give the trustee unfettered discretion or absolute power to employ agents to carry out the express duties imposed upon the trustee to lease the trust property and collect the rentals.

■ Paragraph VII authorizes the trustee to disperse trust funds for the payment of operating expenses which are "*reasonably necessary* to the good management . . . renting, leasing, or hiring" of the trust properties. The following has been generally stated concerning the issue of what dispersements a trustee should be entitled to make from trust funds for services performed for the trust by third parties:

"A trustee should not receive credit for payments made to procure the services of others for the trust, when the duties thus delegated should have been performed by the trustee himself. He cannot farm out the various tasks of the trusteeship to specialists, make payments from the trust fund to them for their work, reserve to himself merely the positions of employer and supervisor, and still collect a full commission for being trustee. He should receive credit for payments made to assistants only when an ordinarily prudent and diligent man in his position would require the help of experts or specialists, as in the case of legal or accounting problems, investment matters and tax questions of great difficulty." Bogert, Trusts & Trustees, § 792, pp. 230–32 (2d Ed. 1962), and authorities cited therein.

At trial, W. T. Neyland testified that he was hired by the Trustee, to "collect the rent." Neyland admitted that his realty company also did some of the leasing of the trust properties. He said:

"Generally, we attempted to rent the properties, yes, Sir, or sometimes Dudley (trustee) sent people down to us. It was kind of an unusual arrangement, but if something was vacant, why, sometimes we would put a sign on it or give the sign to Dudley (trustee) and he'd put it on the property, or sometimes we'd advertise it. There was no set pattern to it."

Neyland stated that the tenants would come to his office to pay the rent and that at the end of each month, he would total the amount of rent collected, and remit 90% to the trustee after deducting 10% for his services. Neyland was neither an attorney nor an accountant.

Neyland's only service to the trust, in addition to assisting the trustee in leasing the property, was to accumulate the rent checks on a monthly basis, and to remit 90% of such to the trustee. Neyland did not go to the rental properties to collect the rents, but merely received the rents which tenants left at Neyland's office. There is nothing in the record to suggest that this task was complex, unreasonably time-consuming, or

was anything other than what the trustee could have performed himself. We hold that the trial judge could have concluded, from all of the facts, that it was unnecessary for the trustee to employ Neyland to rent the properties and collect the money due on the few trust properties involved, when these simple tasks should have been performed by the trustee himself.

■ Neyland's testimony raises another factual issue. It can be inferred from his testimony that in leasing the trust properties, Neyland exercised some discretion as to the terms of the lease arrangement. Such action under the express terms of paragraph IV of the trust instrument was also vested "within the sole discretion of said trustee." As a general rule, a trustee cannot hire agents or otherwise delegate authority to a third person to carry out the trustee's powers which require the exercise of discretion on the part of the trustee. See Bogert, Trust & Trustees, §§ 555, 556 (2d Ed. 1960); 57 Tex.Jur.2d, Trusts § 129 (Delegation of Authority) (1964); Annot., Trustee's Power to Employ Broker or Agent to Sell or Lease Estate Property, 47 A.L.R.2d 1379, § 3 (1956). Appellant's point of error one is hereby overruled.

■ In points of error two through eight, the Bank challenges the jury's answers to special issues four and five on legal and factual sufficiency grounds. Appellant's "legal sufficiency" point presents a question of law, and our review requires us to consider only the evidence and the inferences which support the questioned findings, disregarding all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.Sup.1965); *Biggers v. Continental Bus System*, 157 Tex. 351, 303 S.W.2d 359, 363 (1957). In deciding Appellant's "factual sufficiency" point, we must consider all the evidence. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1957).

These special issues and the jury's answers are as follows:

"QUESTION 4

From a preponderance of the evidence, do you find that Dudley Jones, As Trus-

tee, failed to pay to and transfer to Walter James Roberts and Willie Joseph Roberts all of the monies to which they were entitled under the trust?

In answering this question, do not consider any of the following matters as each is an issue of law that will be decided by the Judge:

(a) The sum of $643.00 deducted by Dudley Jones as 'Trustee's Commission on Sale of Realty.'

(b) The 10% of the rents collected by Neyland Realty for Dudley Jones and retained by Neyland Realty as its commissions or fees.

(c) The method of determining the fees (sic) or the fees due Dudley Jones as Trustee's fees under the trust agreement.

Answer 'He did fail' or 'He did not fail.'

Answer: He did fail.

If you have answered Question 4 'He did fail,' then answer Question 5; otherwise, do not answer Question 5.

### QUESTION 5

What amount of money, if any, do you find from a preponderance of the evidence that Dudley Jones, as Trustee, failed to pay to and transfer to Walter James Roberts and Willie Joseph Roberts?

Answer in dollars and cents.

Answer: $26,450.00."

One of the primary duties of a trustee is to keep full, accurate and orderly records concerning the status of the trust estate and of all acts performed thereunder. *Shannon v. Frost Nat. Bank of San Antonio,* 533 S.W.2d 389 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.); *Searle-Taylor Mach. Co., Inc. v. Brown Oil Tools, Inc.,* 512 S.W.2d 335 (Tex.Civ.App.—Houston (1st Dist.) 1974, writ ref'd n.r.e.). A trustee is charged with the duty of maintaining an accurate account of all of the transactions relating to the trust property. He is chargeable with all assets coming into his hands, the disposition for which he cannot account. See *National Cattle Loan Co. v. Ward,* 113 Tex. 312, 255 S.W. 160 (1923);

*Maxwell's Unknown Heirs v. Bolding,* 36 S.W.2d 267 (Tex.Civ.App.—Waco 1931, no writ); Bogert, Trusts & Trustees § 962 (2d Ed. 1962). Although the duty to render a formal account to the beneficiaries of a trust in most states is required by statute, in Texas, unless otherwise required under the terms of an express trust, the Texas Trust Act generally grants to the district court " . . . original jurisdiction . . to require accounting by trustee; . . . " Tex.Rev.Civ.Stat.Ann. art. 7425b–24(A) (1960). Rule 172, Texas Rules of Civil Procedure, authorizes the trial court to appoint an auditor to investigate accounts or examine vouchers and to make a report to the court when such action appears necessary for the purpose of justice between the parties to a suit. Rule 171, Texas Rules of Civil Procedure, authorizes the trial court (in appropriate cases), to appoint a Master in Chancery. See: Bogert, supra, § 965–975. In the event the trustee dies prior to the time he has rendered an account or has been required to render an account, as in this case, the successor trustee or the personal representative of the deceased trustee must render the account for the trust beneficiaries. See *Engelsmann v. Holekamp,* 402 S.W.2d 382 (Mo.Sup.1965); 36 A.L.R.3d 1071, Trusts: Duty of Personal Representative of Deceased Trustee to Render Account (1971).

In this case, the trust instrument expressly required "an annual accounting as of the 31st day of December of each and every year, the purpose of which shall be to determine the annual net income received and held by said trustee, and the portion of annual net income to be paid to Lillie Roxana Colvin, upon her request, shall be based on said annual accounting." Neither the Texas Trust Act nor the subject trust instrument set out precisely what would be required in the accounting. However, to determine "net income," a minimum annual accounting would account for all money received and all expenditures made. The trustee should have at least given an accurate and complete statement of the trust estate, free

from any suggestion of fraud. See *Conrad v. Judson*, 465 S.W.2d 819 (Tex.Civ.App.— Dallas 1971, writ ref'd n.r.e.) cert. denied 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 582 (1972); *Cook v. Peacock*, 154 S.W.2d 688 (Tex.Civ.App.—Eastland 1941, writ ref'd w.o.m.); 36 A.L.R.3d 1071, Trusts: Duty of Personal Representative of Deceased Trustee to Render Account (1971); *Englesmann v. Holekamp*, 402 S.W.2d 382 (Mo.Sup.1965). As stated in the Restatement of Law, Trusts, § 172:

> "A. Duty to keep accounts. The trustee is under a duty to keep accounts showing in detail the nature and amount of the trust property and the administration thereof.
>
> B. Effect of failure to keep accounts. If the trustee fails to keep proper accounts, he is liable for any loss or expense resulting from his failure to keep proper accounts. The burden of proof is upon the trustee to show that he is entitled to the credits he claims, and his failure to keep proper accounts and vouchers may result in his failure to establish the credits he claims."

The general rule is stated in Bogert, Trusts & Trustees, § 970, p. 203 (2d Ed. 1962), as follows:

> "It would seem that the burden of proving the propriety of acts set forth in the account, if they are objected to, should rest on the trustee; but if he makes out a prima facie case the burden of proving contradictory evidence rests on the beneficiary who has objected."

The records of the trust in this case are in a deplorable state. This was the fault of the original trustee. The beneficiaries rightfully sought a judicially ordered accounting of the trust income and disbursements when the trustee failed to comply with their request. The Bank initially took the position that the records of the trustee were so incomplete that it would be virtually impossible to produce an accounting. The Bank accepted the administration of the estate, however, and as such, accepted the obligations that fell on it as the executor of this poorly handled trust. After several pretrial motions and hearings, the Bank tendered the first of three "accountings." In each of the three accountings, the Bank attempted to recreate a summary of the income and expenses of the trust for each year of the trust's duration from 1949 to 1972. The income of the trust was divided into four categories which included: 1) rent; 2) sale proceeds; 3) insurance proceeds; and 4) interest. The expenses were divided into thirteen categories: 1) repairs; 2) real estate taxes; 3) collection expense; 4) legal & accounting expense; 5) utilities; 6) insurance; 7) trustee fee; 8) distribution to or for Mrs. Colvin; 9) lease expense; 10) distribution to Walter or Willie Roberts (beneficiaries); 11) income tax; 12) miscellaneous expense; and 13) real estate purchase. The following, in summary, depicts the total income, the total expenses and the remaining proceeds on hand in each of the three accountings:

| | Total Income | Total Expenses | Net Due Beneficiaries |
|---|---|---|---|
| First Accounting | $209,607.34 | $162,682.40 | $46,924.94 |
| Second Accounting | 227,270.51 | 163,901.73 | 63,368.81 |
| Third Accounting | 233,446.33 | 163,901.73 | 69,544.60 |

The beneficiaries received the sum of $71,679.94 from the trustee. According to each of the accountings tendered by the Bank, the beneficiaries received more money than each of the Bank's three accountings showed they were entitled to receive.

The record shows that the Bank utilized four different sources to compile the accountings: 1) some of the original cancelled checks signed by the trustee; 2) copies of fiduciary tax returns filed by the trustee; 3) copies of tax returns of the trust filed by the settlor during her lifetime (Mrs. Colvin); and 4) accounting recapitulation or summary statements prepared by the trustee's accountant, Mr. Haese.

During the trial, prior to the introduction of the various accountings or supporting data, the Bank's chief trust officer, Moore, testified, in summary, that: 1) the Bank did not have all (and in some years, none) of the cancelled checks or monthly bank statements of the trustee checking account as supporting data for the years represented in the accounting, but that such records were on microfilm in the Bank's records of the trustee account; 2) the Bank had no bills marked "paid," nor any vouchers, and only some of the cancelled checks for the expenses shown on the accounting; 3) the accounting was based partially upon recapitulation sheets apparently prepared by one J. Ray Haese, Deceased, who was not an employee of the Bank, was not a certified public accountant, and with whom Mr. Moore had never even talked; 4) in preparing the accounting of expense charged to the trust estate, if the recapitulation sheet showed a greater amount than the total amount of the cancelled checks, that amount was used, and if the total amount of the cancelled checks was greater, it was used; 5) the figures which were taken from the fiduciary tax returns and recapitulation sheets were not verified against the Bank's records; 6) the rental income was taken from Haese's recapitulation sheets and not from Neyland's records; 7) the sales proceeds were taken from the recapitulation sheets; 8) the trustee took a larger fee than he was entitled to in 1956, but the overage was not added back into the estate; 9) the accounting was merely a report of what the trustee did with the money rather than what he should have done with it; 10) that in the years from 1961 to 1972 where they had no recapitulation sheets the figures from the fiduciary tax returns were used even though the Bank: a) did not make up the returns; b) did not vouch for their accuracy; c) nor had it attempted to verify them; 11) they used some figures from the deposit book, but disregarded other deposits; 12) the records used as the basis for the accounting were: a) the cancelled checks and monthly statements of the trustee bank account which were incomplete; b) the recapitulation sheets and fiduciary tax returns apparently prepared by Haese, with whom the Bank had never spoken and had no way of verifying the figures; and c) a deposit book which was not verified with the Bank's records; 13) and that the accounting presented before trial did not contain all of the known income of the trust estate.

The Bank, in its brief, explains the reasoning for using the higher figure in each year in the accounting as follows:

"The reasoning for using the higher figure in each year when the recap sheet showed more expenses than did the cancelled checks was that Defendant (Bank) knew that many of the original cancelled checks were now missing from the Trustee's record but that the accountant, Mr. Haese, relied solely upon the original cancelled checks presented to him each year, along with receipts and other supporting data in preparing the tax returns and recap sheets. The reasoning for using the highest figure in each year when the expense is shown by the cancelled checks exceeded the expenses shown on the tax return or recap sheets was that although the cancelled checks for the notation of a particular address of a trust property, some of the expenses were undoubtedly capital improvement and not repairs which the tax returns and recap sheets did not reflect (same not being a proper expense item for income tax purposes) and, further, it could be reasonably assumed that some of the checks may not have been given to the accountant."

When each of the three accountings was offered into evidence and when each item of supporting data was offered, the beneficiaries made objections that such evidence was hearsay or based upon hearsay and, therefore, not competent for any purpose. The supporting data, including the annual tax returns and annual trustee statements, were introduced into evidence for the limited purpose of showing the data upon which the accountings were made, and not to prove the truth of the matters asserted therein.

It was virtually undisputed that the accountings were inaccurate and incomplete because of the absence of numerous checks and because several sources were combined into one final accounting, without complete reconciliation. It was also undisputed that the trustee's records did not contain all of the cancelled checks and that some $30,000.00 of the claimed expenses could not be substantiated by cancelled checks.

It is the Bank's position on appeal that it made out a prima facie case when it provided an accounting of the trust which the trial court initially decreed was a full and complete accounting. The Bank argues that thereafter the beneficiaries failed to prove that the trustee failed to turn over all of the trust fund monies to the beneficiaries and specifically, that the trustee failed to turn over an amount equal to $26,450.00 as found by the jury. The beneficiaries, on the other hand, vehemently contend that the Bank failed to establish even a prima facie case because each accounting was based upon unverified, inaccurate, and incomplete reports, much of which was based on hearsay. We agree with the beneficiaries.

Even if we accept the Bank's argument that a prima facie showing concerning the "accounting" was made when the Bank tendered its first accounting which was accepted by the trial court, we are of the opinion that the reliability of such account was impeached substantially by the evidence introduced throughout the trial, including the Bank's "updated" second and third accountings. The beneficiaries objected to the sufficiency of each of the tendered accounts. The pleadings and evidence place the validity and accuracy of the accountings in issue. The sole special issue before the jury broadly placed the entire accounting procedure employed by the Bank in question. The accountings and the supportive evidence in this case were voluminous and complex. Apparently, the parties and the trial judge were of the opinion that the matter should be resolved by the jury, after the court turned down the beneficiaries' request for a Master in Chancery. Neither the propriety of the decision to submit the question to the jury nor the substance or form of the submitted special issues has been questioned on appeal.

After carefully considering the record, we are of the opinion that there is ample evidence from which the jury could reasonably conclude that the trustee did not pay to the beneficiaries all of the trust funds to which they were entitled. The record is replete with evidence concerning the inaccuracies of the accounting and the absence of any supportive data to show that some $30,000.00 in expenditures were actually made by the trustee in furtherance of the management of trust affairs. The jury's determination that the trustee failed to turn over the sum of $26,450 also finds support in the testimony. The jury's answers to these special issues are not against the great weight and preponderance of the evidence. Accordingly, Appellant's points of error two through eight are overruled.

In point of error number nine, the Bank complains that the trial court erred in submitting, over its objection, special issue number one to the jury because such special issue constituted "a comment on the weight of the evidence in that it improperly places an undue weight on the trust instrument, requiring the jury to construe the trust instrument, as opposed to that of the standards of an ordinary prudent trustee. This issue and the jury's response thereto were as follows:

"Do you find from a preponderance of the evidence that Dudley Jones, acting as Trustee, during the term of the trust (February 18, 1949 to January 29, 1972) failed to maintain or repair the trust properties as he was required to do by the trust instrument?"

Answer: "Yes, he failed." or "No, he did not fail."

Answer: "Yes, he failed."

Although the Bank's brief states that this point of error is germane to points one and two in his Rule 301 motion requesting the trial judge to disregard the jury's answer to this special issue, this point of error actually

complains of the form in which the special issue was submitted to the jury and is, therefore, germane to the Bank's objections to the trial court's charge.

In his objections to the trial court's charge, the Bank specifically objected to the form of Special Issue No. 1 in the following manner:

"Defendant (Trustee) objects to Issue No. 1, and specifically that portion of Issue No. 1 wherein it states, '. . . as he was required to do by the trust instrument' in that (a) same is a comment on the weight of the evidence in that it places an undue weight on the trust instrument as opposed to that of the standards of an ordinary prudent trustee."

An examination of the Bank's arguments on appeal and the Bank's Rule 301 motion reveals that the Bank was attempting to object to special issue number one on two distinct grounds, even though only one objection was stated in its objections to the trial court's charge. In essence, the Bank is now complaining that special issue number one was submitted to the jury in an improper form because: 1) it constitutes a comment on the weight of the evidence because it requires the jury to construe the terms of the trust instrument, which is a question of law for the court, and 2) it fails to define the standard of care of the trustee as that of an ordinary prudent person under the same circumstances.

Rule 274, Texas Rules of Civil Procedure, requires that "[a] party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection." An objection which fails to specifically designate the error and the ground of complaint is properly overruled. *Monsanto Co. v. Milam*, 494 S.W.2d 534, 537 (Tex.Sup.1973); *Implement Dealers Mutual Insurance Co. v. Cox*, 376 S.W.2d 384 (Tex. Civ.App.—Houston (1st Dist.) 1964, no writ). We are of the opinion that the Bank failed to frame its objections to the trial court's charge with sufficient specificity to point out the actual grounds of the complaints that he is now making on this appeal. Appellant's point of error number nine is overruled.

In point of error number ten, the Bank complains that the trial court erred in overruling his motion to disregard the jury's answer to special issue number three because, as a matter of law, the answer to that question could not form the basis upon which the trial court could render a judgment against the Bank. Special issue three was conditionally submitted upon affirmative answers to special issues one and two. The jury found, in essence, that the trustee's failure to maintain or repair the trust properties resulted in a decrease in value of such trust properties (special issue two) in the amount of $32,000.00 (special issue three).

This point of error is stated in such a general manner that it also fails to direct our attention to the error upon which the trustee relies as required by Rule 418, Texas Rules of Civil Procedure, and therefore, is overruled.

We observe additionally that the Bank's brief states this point of error is germane to three specific points contained in his Rule 301 motion. Two of these three points in such motion complain that special issue three fails to submit to the jury the correct measure of damages. The third point complains that the plaintiffs had failed to prove the value of the trust properties before and after the alleged failure of the trustee to make repairs. The Bank's arguments and authority contained under this point of error are directed to what the Bank contends were the proper measure of damages to be submitted to the jury. Again, Appellant (as we understand its argument) is complaining of the form in which the special issue was submitted to the jury. The Bank did not object to the form in which special issue three was submitted to the jury. The Bank's only objection was:

"Defendant (Bank) objects to special issue three for the reason that there is no way upon which the jury can calculate the amount of decrease in the value of the trust properties and that any answer in the affirmative on their part would be pure speculation."

This vague, confusing objection does not make a complaint concerning the measure of damages submitted to the jury.

 A complaint about the correct measure of damages contained in a special issue which is submitted to the jury must be raised with the trial court in the form of an objection to the charge or it is waived. *Missouri Pacific Railroad Co. v. Cross*, 501 S.W.2d 868 (Tex.Sup.1973); *American Transfer & Storage Co. v. Reichley*, 560 S.W.2d 196 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.); *Lanphier Construction Co. v. Fowco Construction Co.*, 523 S.W.2d 29 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). Where a ground of recovery is submitted, even though it is erroneous, the parties are thereby put on notice that the jury's answers to the issues actually submitted will, if supported by the evidence, form the basis of the court's judgment. It is the duty of each party to point out errors in the trial court's charge or be held estopped from thereafter urging them. *Allen v. American National Ins. Co.*, 380 S.W.2d 604 (Tex.Sup.1964); *Lanphier Construction Co. v. Fowco Construction Co.*, 523 S.W.2d 29, 43 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). We hold that there is evidence in the record concerning the decrease in value of the trust properties. Appellant's point of error number ten is overruled for these additional reasons.

In point of error number eleven, the Bank complains that the trial court erred in rendering judgment for $32,000.00 in response to the jury's findings to special issues two and three because the jury's answers to these issues could not form the basis of the trial court's judgment for this amount in view of the exculpatory language contained in the trust instrument.

The provisions of the trust instrument upon which Appellant relies are two sentences, one contained in paragraph II, and the other in paragraph IV, which state as follows:

"And I, by these presents, fully and absolutely ratify and confirm any and all acts which the said Dudley Jones, . . . or his or their substitutes or successors an herein provided, may do in the premises by virtue of and in conformity with this instrument.

"And said Trustee shall have the right to manage and control such trust properties in such manner as to him may be advisable."

Appellant contends that the above quoted language indicates the settlor's intent that the trustee should have *sole discretion* in the manner of operating the trust properties, including the making of repairs. In support of this contention, Appellant relies solely upon a case from this Court. *Corpus Christi National Bank v. Gerdes*, 551 S.W.2d 521 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).

We have again examined this authority upon which the Bank relies and find that it is factually distinguishable from the case before us. In *Gerdes*, the exculpatory language in question expressly provided that neither the trustee nor the independent executor should be held liable for any mistake or error of judgment or negligence. The instrument contained the following language:

"(6) Liability of Trustee.

No Trustee, Co-Trustee, or successor Trustee shall be liable for any mistake or error of judgment or negligence, but shall be liable only for her or its own dishonesty."

In the *Gerdes* case, we noted that Article 7425b–22 of the Texas Trust Act expressly gave the trustor the power to relieve his trustee of all duties, restrictions, and *liabilities* imposed by law (except in three instances which were not applicable in the *Gerdes* case and are also not applicable in the case before us). Based upon the clear, unambiguous terms of the trust instrument, and in view of the statutory authorization, we held that the trial court committed reversible error by submitting negligence issues to the jury and rendering judgment based on the answers thereto. But here there is no similarly precise exculpatory language contained in the trust instrument.

 As a general rule, the courts, in construing both trusts and wills, attempt to

ascertain the intent of the maker. *Stewart v. Selder,* 473 S.W.2d 3 (Tex.Sup.1971); *Corpus Christi National Bank v. Gerdes,* 551 S.W.2d 521 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Ruby v. Green,* 535 S.W.2d 385 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). If the language of the instrument is unambiguous and expresses the intention of the maker, it is unnecessary to construe the instrument because such instrument speaks for itself. In such a situation, a trustee's powers are conferred by the instrument and neither the trustee nor the courts can add to or take away from such powers, but must permit it to stand as written and give to it only such construction as the settlor or testator intended. *Huffman v. Huffman,* 161 Tex. 267, 339 S.W.2d 885 (1960); *Jackson v. Templin,* 66 S.W.2d 666 (Tex.Com.App.1933, jdmt. adopted).

The language upon which the Bank relies does not specifically relieve the trustee of any and all potential liability. It merely states that the settlor ratifies and confirms all of the trustee's acts which the trustee may perform in the premises "by virtue of and in conformity with this instrument." This language merely refers us to the terms of the trust instrument wherein the duties of the trustee are specifically prescribed. Although the trust instrument generally states that the trustee shall manage and control the trust properties "in such a manner as to him may be advisable," other provisions of the trust specifically delineate the powers and responsibilities of the trustee. For instance, concerning the improvement and repair to trust properties, the trust provided that:

"The said Trustee shall have the further right and power, if he deems it advisable, to improve said trust properties, or any portion thereof, in such a manner as he deems advisable, including the erection and building of new and additional improvements, or the removal of existing improvements and the erection and building of other improvements, *and including the repair and upkeep of all improvements on said properties.*" (Emphasis added.)

Paragraph 7 then specifically authorizes and directs the trustee to disperse trust funds in a designated order of precedence. First, " . . . *make all necessary repairs* to existing improvements on the Trust properties." (Emphasis added.) The second priority was to: "maintain and preserve" the trust properties; and the third and last priority was to pay the trustee his compensation.

Considering these specific provisions along with the other provisions of the trust instrument as a whole, we are of the opinion that the settlor intended the trustee to use good judgment in making the repairs to the trust property in order to accomplish the objectives of the trust. While the language of the trust instrument does not place an absolute duty upon the Trustee to repair the trust properties under all circumstances, neither does the trust instrument contain exculpatory language which would give the trustee absolute immunity for his failure to make necessary repairs under the circumstances. We hold that the trustee had the duty to make such repairs to the trust property as a reasonably prudent person would have made in order to accomplish the objectives of the trust. See Bogert, Trust & Trustees, § 600 Repairs, p. 357, 358–369; § 541 Trustee's Duty in General (2d Ed. 1960). The general language in the trust instrument upon which the Bank relies, is insufficient to exculpate the trustee in this instance as a matter of law. Appellant's point of error number eleven is overruled.

The judgment of the trial court is AFFIRMED.