# IN THE SUPREME COURT OF TEXAS

════════════
No. 13-0709
════════════

ROBERT VALDEZ, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF
PIERRE V. BERNARD, DECEASED, AND FIDELITY AND CASUALTY COMPANY OF
NEW YORK, PETITIONERS,

v.

DAVID HOLLENBECK, INDIVIDUALLY AND AS SUCCESSOR ADMINISTRATOR OF
THE ESTATE OF PIERRE V. BERNARD, DECEASED, WILL FRANCES BARON, JOHN
BERNARD BARON, BERNARD RAE BERNARD BOX, DARYL BERNARD, MARCUS
BERNARD, BARBARA STREFF GRACHEK, PAM STREFF MYERS, STEVE STREFF,
SCOTT STREFF, YVONNE BARON FISCHER, ELIZABETH LAMAR, KELLY LAMAR
LOEFFELHOLZ, JEANNE MARY LAMAR, JOHN LAMAR, DAVID LAMAR, GREG
LAMAR, CHRIS LAMAR, ERIC LAMAR, ROBERT ROGERS, DANA ROGERS, JOHN
ROGERS, INDIVIDUALLY, AND DANA ROGERS AND SHERRIE GROGAN, IN THEIR
CAPACITY AS JOINT INDEPENDENT EXECUTRIX OF THE ESTATE OF CHARLES
ROGERS, DECEASED, RESPONDENTS

════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
════════════════════════════════════════════

**Argued February 24, 2015**

JUSTICE GUZMAN delivered the opinion of the Court.

For more than a decade, a rogue probate clerk looted millions of dollars from the estates of

Bexar County residents who had died intestate. Discovery of the crime spree generated a number

of civil disputes, including this case, which involves an intestate estate defrauded of more than half

a million dollars. More than a decade after the estate's administration had closed—and more than three years after learning the estate had been significantly undervalued—the intestate's heirs petitioned the probate court by statutory and equitable bills of review to re-open the estate, alleging the estate administrator breached fiduciary duties and fraudulently concealed information about the estate's assets. The probate court denied the statutory bill of review, but granted the equitable bill of review and set aside the orders closing probate. The heirs successfully litigated their claims against the administrator and were awarded damages against the administrator and his surety. The court of appeals affirmed. 410 S.W.3d 1 (Tex. App.—San Antonio 2013).

The threshold issue here is whether the equitable bill of review was timely filed. Generally, a bill of review allows a party to challenge a judgment after the time for filing a motion for new trial or an appeal has expired. Recognizing the importance our legal system places on the finality of judgments, courts generally allow bills of review only in limited circumstances or as authorized by statute. An equitable bill of review must ordinarily be filed within four years of the date the judgment is signed unless extrinsic fraud is established or an express limitations period is prescribed by statute. *See* TEX. CIV. PRAC. & REM. CODE § 16.051 (prescribing four-year residual statute of limitations if "there is no express limitations period"); *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 275 (Tex. 2012) (tolling limitations period because there was some evidence of extrinsic fraud). At the time of the events giving rise to this suit, Texas Probate Code section 31 provided that "no bill of review shall be filed after two years have elapsed from the date of [the probate court's] decision, order or judgment." Act of March 17, 1955, 54th Leg., R.S., ch. 55, § 31, 1955 Tex. Gen. Laws 88,

2

97 (former TEX. PROB. CODE § 31).[1] Section 31's plain language thus establishes a two-year limitations period for bills of review attacking a probate decision, order, or judgment. Although the heirs contend limitations was tolled, we need not decide whether and under what circumstances tolling doctrines might apply because the effect of any tolling would have ended more than two years before the heirs filed their bill-of-review petition. We therefore hold the heirs' bill of review is untimely. Accordingly, without reaching the merits of either the bill of review or the underlying claims, we reverse the court of appeals' judgment and render judgment for the administrator and the surety on the bill of review.

## I. Factual and Procedural Background

This case is yet another in a series of suits stemming from the misconduct of a former Bexar County probate clerk, Melvyn Spillman, who stole millions of dollars from approximately 127 intestate probate estates he was tasked with handling in his capacity as a probate consultant with the medical examiner's office.[2] Spillman's victims included the estate of Pierre V. Bernard, from which he stole more than half a million dollars while administration of his probate estate was pending.

Bernard died January 25, 1994. Two days later Robert A. Valdez, a San Antonio attorney,

---

[1] Effective January 1, 2014, the Texas Probate Code was repealed and recodified as the Texas Estates Code. *See* Act of May 19, 2011, 82nd Leg., R.S., ch. 823, §§ 1.01-4.03, 2011 Tex. Gen. Laws. 1901, 1901-2095; Act of May 26, 2009, 81st Leg., R.S., ch. 680, §§ 1-12, 2009 Tex. Gen. Laws 1512, 1512-1732. Section 31's provisions have been recodified as sections 55.251 and 55.252 of the Estates Code in substantially similar form. *See* Tex. Estates Code §§ 55.21-.252. Citations in this opinion will be to the Texas Probate Code sections applicable to this suit.

[2] *See generally Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602 (Tex. 2012) (involving an estate administrator's suit against a bank for breach of a deposit agreement due to fraud); *Jefferson State Bank v. Lenk*, 323 S.W.3d 146 (Tex. 2010) (involving a suit against a bank arising from Spillman's fraudulent transfer of funds from decedent's estate); *In re Estate of Melchior*, 365 S.W.3d 794 (Tex. App.—San Antonio 2012, pet. denied) (featuring another suit against an investment firm for conversion arising out of Spillman's misappropriation of funds).

applied to serve as administrator for Bernard's estate. Within a month, Valdez was appointed by the probate court as the personal representative and administrator of Bernard's estate. To secure his administration, Valdez filed a $260,000 surety bond issued by Fidelity and Casualty Company of New York.

With the necessary orders in place, Valdez promptly inspected Bernard's home for records and other information about assets Bernard owned at the time of his death. On March 3, 1994, Valdez filed an "Inventory and Appraisement of the Estate" with the probate court in which he valued Bernard's estate at $411,000, composed of $150,000 in real property and $261,000 in personal property (the March 1994 inventory). Valdez reported that Bernard's personal property was held in accounts at five different financial institutions.[3] Valdez swore in the inventory that, to his knowledge, the list was "a full and complete inventory and list of the property and claims of the estate" and "that the true amount of cash belonging to said estate [was] correctly stated therein." On March 10, 1994, the probate court approved the March 1994 inventory.

Two months later, an individual federal income tax return signed by a certified public accountant (CPA) was filed on Bernard's behalf for the 1993 tax year, which had ended about a month before Bernard's death. Schedule B of the return reported taxable interest income of $19,494 from ten financial institutions, including four banks not included in the March 1994 inventory.[4] No

_____

[3] The accounts and balances were listed as (1) $100,000 at Bank of the West, (2) $85,000 at NationsBank, (3) $25,000 at Eisenhauer National Bank, (4) $25,000 at Guaranty Savings, and (5) $25,000 at Jefferson Bank.

[4] The tax return discloses that, for tax year 1993, Bernard maintained interest-bearing accounts at: (1) Bank of the West; (2) Broadway Bank; (3) Eisenhower Bank; (4) Guaranty Federal Savings; (5) IBC; (6) Jefferson State Bank; (7) NationsBank (two entries); (8) Security National; and (9) Eisenhower National.

account balances were listed for these accounts on the tax return, and it is undisputed that the tax return was not filed with the probate court. Nearly two years later, Valdez applied for payment of his attorney's fees and expenses. The application reflected Valdez had participated in preparation of the tax return, at least to some degree, because it contained line items of 2.15 hours on April 12, 1994, for "gather[ing] tax info for CPA" and 1.30 hours on April 20, 1994, for "telephone conversations with CPA, pay[ing] bills." Valdez, however, never filed an amended estate inventory that identified any additional bank accounts that may have existed at the time of Bernard's death or any account balances that differed from those stated in the March 1994 inventory.

Instead, Valdez's "Account for Final Settlement" of the estate, filed with the court on May 8, 1996, listed assets that included "CD transfer[s]" totaling approximately $240,000 along with other receipts. Valdez reported the total value of the estate as $343,213.35 after payment of estate debts and expenses. The probate court ordered final settlement and distribution of the estate on June 14, 1996, and on October 4, 1996, signed an order (1) discharging Valdez as administrator, (2) discharging Fidelity from further liability on the adminstrator's bond, and (3) closing the estate.

Years later, Spillman was convicted of a host of offenses related to his theft. The criminal trial revealed Spillman had been pilfering estates in his charge for years.[5] In April 2002, Edward L. Rishebarger, a certified public accountant, was appointed as receiver of the assets seized from Spillman and was tasked with determining the value of property misappropriated from the defrauded estates, including the Bernard estate.

---

[5] When revealed, Spillman's illicit activity received considerable press attention. *See, e.g.*, Jim Yardley, *Where There Wasn't a Will, He Found a Way*, N.Y. TIMES, May 18, 2002.

In March and April 2003, Bernard's heirs learned that Spillman had misappropriated funds from his estate.[6] In a letter dated April 21, 2003, Rishebarger provided the heirs with instructions for filing a claim for restitution from assets under receivership. Rishebarger, citing accounts at all of the banks listed on the 1993 tax return, estimated that Bernard owned $698,319.08 in personal property assets at the time of his death, which was considerably more than the $260,000 Valdez had reported. For some of the banks that had been identified on the March 1994 inventory Valdez had filed, Rishebarger found account balances greatly in excess of those Valdez had reported to the probate court.

In August 2003, Rishebarger filed a report recommending a plan for paying restitution claims. In that report, which was served on Bernard's heirs, Rishebarger concluded Spillman had ultimately stolen $522,834.79 from the Bernard estate. The court thereafter approved a distribution plan in which the Bernard estate would receive $56,878.65 in restitution.

The heirs named Bernard Baron, a first cousin of the decedent, to lead recovery efforts related to the estate. On March 8, 2005, Baron applied (1) to re-open administration of the probate estate to receive the approved distribution of receivership assets and (2) to be appointed as successor administrator. The probate court granted Baron's application on April 11, 2005, and the estate received the allotted restitution payment on May 9, 2005. Rishebarger sent a copy of the 1993 tax return with the distribution check, which prompted the heirs to file suit against Valdez in the original

---

[6] The heirs are Bernard W. Baron; Bernie Rae Bernard Box; Daryl Bernard; Marcus Bernard; Barbara Streff Grachek; Pam Streff Meyers; Steve Streff; Scott Streff; Yvonne Baron Fischer; David Hollenbeck; Elizabeth Lamar; Kelly Lamar Loeffelholz; Jeanne Mary Lamar; John Lamar; David Lamar; Greg Lamar; Chris Lamar; Eric Lamar; Robert Rogers; Dana Rogers; John Rogers; and Dana Rogers and Sherrie Ann Grogan, in their capacity as Joint independent Executrix of the Estate of Charles Rogers, deceased.

probate case for fraud and breach of statutory and fiduciary duties.[7]  The heirs also sued Fidelity as surety on the administrator's bond.

The probate court concluded it lacked jurisdiction to appoint a successor administrator or reopen the probate estate without first setting aside the 1996 orders by bill of review.[8]  The heirs therefore filed a petition for bill of review on December 11, 2006, to set aside the probate orders (1) approving the March 1994 inventory, (2) approving the final account, (3) discharging Valdez and Fidelity, and (4) closing the estate (referred to collectively as "the 1996 probate orders").  One year later, a bench trial took place in the bill-of-review proceeding.  The probate court denied the heirs' request for a statutory bill of review, but granted their request for an equitable bill of review and set aside the 1996 probate orders as void.  In the judgment granting the bill of review, the probate court found the 1996 orders:

- •  "were entered as the result of fraud, accident, or wrongful acts" of Valdez;

- •  "were rendered...without any negligence on the part of the [heirs]"; and

- •  "were not rendered as the result of any fraud, accident, or wrongful acts on the part of Respondent Fidelity and that nothing that Fidelity did or failed to do prevented

---

[7] The heirs did not allege, and there has been no finding, that Valdez was complicit in Spillman's theft.

[8] The heirs initially filed their lawsuit in the original probate proceeding as a suit appertaining and incident to a probate estate under former section 5A of the Probate Code, which was repealed in 2009.  *See* Act of May 31, 2009, 81st Leg., R.S., ch. 1351, § 12(h), 2009 Tex. Gen. Laws 4273, 4279.  However, a probate proceeding must be pending for a probate court to exercise  jurisdiction over matters related to that proceeding under former section 5A.  *See, e.g.*, *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 506 (Tex. 2010) (acknowledging that a court may exercise its probate jurisdiction over "matters incident to an estate" only when a probate proceeding is already pending in that court (quoting *Bailey v. Cherokee Cnty. Appraisal Dist.*, 862 S.W.2d 581, 585 (Tex. 1993))); *In re Sims*, 88 S.W.3d 297, 304 n.3 (Tex. App.—San Antonio 2002, orig. proceeding) (same); *Schuld v. Dembrinski*, 12 S.W.3d 485, 487 (Tex. App.—Dallas 2000, no pet.) (same).  A bill of review, however, is a direct attack on a judgment and only the court rendering the original judgment has jurisdiction over the proceeding.  *Frost Nat'l Bank*, 315 S.W.3d at 504.  District courts have general jurisdiction over all civil actions, proceedings, and remedies except when exclusive jurisdiction is vested in another tribunal.  Tex. Const. art. V § 8; Tex. Gov't Code §§ 24.007-.008.

7

[the heirs] from pursuing this bill of review prior to December 13, 2006."[9] The court further concluded the heirs had presented sufficient evidence of a meritorious claim or defense, thereby entitling them to a bill of review.

One of the heirs, David Hollenbeck, was appointed to serve as successor independent administrator of the estate and was substituted as the plaintiff for purposes of pursuing the claims against Valdez and Fidelity. Following a bench trial on the merits, the probate court rendered judgment awarding Bernard's estate $465,956.79, the difference between the amount Spillman stole and the amount Rishebarger was able to distribute from Spillman's seized assets. In the final judgment, Valdez was held liable for the entire amount plus pre- and post-judgment interest, and Fidelity was held jointly and severally liable with Valdez up to the amount of the surety bond, $260,000, plus pre- and post-judgment interest.[10]

In addition to other pertinent findings, the trial court determined:

- the heirs had no adequate legal remedy to avoid the effect of the erroneous 1996 probate orders because they did not acquire actual knowledge of Valdez's failure to disclose the true estate value until after the time had passed for a motion for new trial or a restricted appeal;

- Valdez's failure to disclose all of Bernard's bank accounts in the documents filed with the probate court while disclosing such information in Bernard's 1993 individual income tax return constitutes "extrinsic fraud";

- the 1996 orders were procured based on Valdez's "wrongful acts" and "substantially incorrect material information";

---

[9] The heirs' "Original Petition for Bill of Review" actually bears a December 11, 2006 file stamp.

[10] Fidelity was awarded $260,000 on its cross-claims against Valdez and Spillman, plus pre-and post-judgment interest. Valdez was similarly awarded $465,956 against Spillman, plus pre- and post-judgment interest.

8

- the heirs "did not discover the misappropriation of assets" "or any potential claims against [Valdez] . . . until they received notification from the Receiver [Rishebarger]. . . sometime subsequent to February 20, 2003";

- "[t]he discovery rule applies to this case and [the heirs] had no reason to know, nor should they have known, and the evidence supports a finding that they did not know of any misappropriation pertaining to the [estate] prior to the expiration of limitations to assert a breach of fiduciary duty lawsuit against [Valdez and his surety, Fidelity]"; and

- the discovery rule applies to the four-year statute of limitations for an equitable bill of review based on the existence of extrinsic fraud and the four-year statute of limitations for breach of fiduciary duty.

On appeal, Valdez and Fidelity argued the petition for equitable bill of review was untimely and without merit. Valdez also asserted evidence-sufficiency challenges to various findings supporting the judgment and further challenged the probate court's admission of the 1993 tax return into evidence. Fidelity appealed the award of prejudgment interest above the bond amount and additionally argued that Valdez's wrongdoing could not be imputed to Fidelity for purposes of any applicable tolling doctrines. The heirs did not challenge the order denying their statutory bill of review.

The court of appeals affirmed in all respects, concluding in relevant part that the heirs' equitable bill of review was timely because limitations was tolled until they discovered, or could have discovered, extrinsic fraud. The court did not squarely address when the estoppel effect of tolling ended, but suggested tolling ceased no earlier than March or April 2003 when the heirs learned Spillman had stolen assets from Bernard's estate, which was within four years of the date they filed their petition for bill of review. 410 S.W.3d at 6-8. We granted Valdez's and Fidelity's petitions for review.

9

## II.  Discussion

Although the parties have raised a number of issues on appeal, the crux of the dispute is the timeliness of the heirs' petition for bill of review.  The heirs initiated bill-of-review proceedings more than ten years after the probate court closed administration of Bernard's estate, which necessarily gives rise to limitations concerns.  As presented here, the timeliness question has three aspects: (1) the applicable limitations period; (2) the applicability of any tolling doctrines; and (3) the point at which tolling, if any, ceased.

The parties disagree about whether the applicable limitations period for equitable bills of review in probate proceedings is two years or four years.  Although equitable bills of review are ordinarily subject to a four-year statute of limitations, Valdez and Fidelity argue that, by enacting section 31 of the Texas Probate Code, the Legislature expressly or effectively extinguished equitable bills of review in probate proceedings or, at a minimum, prescribed a two-year limitations period without regard to the type of bill requested.  Citing language in section 31 and arguing for an extension of our precedent, Valdez and Fidelity further contend that tolling doctrines do not apply to bills of review in probate proceedings due to an overarching public policy favoring finality of such proceedings.  *See* FORMER TEX. PROBATE CODE § 31; *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 497 (Tex. 2010) ("The discovery rule does not apply to inheritance or heirship claims by non-marital children, or to bill of review claims to set aside probate judgments."); *Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997) ("Texas courts have refused to apply the discovery rule to claims arising out of probate proceedings in most instances . . . even in the face of allegations of fraud.").  In the alternative, they assert the heirs failed to file their petition for bill of review within two years of

10

discovering Bernard's estate had been undervalued by more than half a million dollars in the probate proceeding.

Given the ten-year lag between final disposition of Bernard's estate and the inception of the bill-of-review proceeding, the heirs rely on discovery-rule and fraudulent-concealment tolling theories to avoid the limitations time-bar, although they vacillate between the two doctrines. Contingent on the applicability of tolling principles, the heirs claim limitations was arrested until May 2005 when they first received a copy of the 1993 tax return, which they allege reflects Valdez's knowledge and concealment of additional estate assets. In the heirs' view, their December 2006 filing was timely whether a two- or four-year limitations period applies. We disagree.

We conclude that a two-year limitations period applies and that the heirs' petition for bill of review was not timely filed regardless of whether limitations was tolled. Because resolution of the limitations issue is dispositive of the appeal, we need not address the merits of the remaining issues.

## A. Bills of Review

"A bill of review is brought as a direct attack on a judgment that is no longer appealable or subject to a motion for new trial." *Frost Nat'l Bank*, 315 S.W.3d at 504. Because it is a direct attack, a bill of review must be filed in the court that rendered the original judgment, and only that court may exercise jurisdiction over the bill. *Id*. Courts have long recognized bills of review rooted in general principles of equity or as prescribed by the Legislature, but courts do not readily grant them "[b]ecause it is fundamentally important in the administration of justice that some finality be accorded to judgments." *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950); *see Crouch v. McGaw*, 138 S.W.2d 94, 96 (Tex. 1940) (noting that a bill of review requires "something more than

11

injustice").

Equitable bills of review are not a novel legal concept and can be traced as far back as seventeenth century England. *See Finality of Equity Decrees in the Light of Subsequent Events*, 59 HARV. L. REV. 957, 958 (1946) ("In equity a decree may be re-examined by a bill of review, a procedure going back at least as far as Lord Bacon's Ordinances in 1619."). To obtain an equitable bill of review, a petitioner must generally plead and prove (1) a meritorious claim or defense to the judgment, (2) which the petitioner was prevented from making by official mistake or by the opposing party's fraud, accident, or wrongful act, (3) unmixed with any fault or negligence on the petitioner's own part. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751-52 (Tex. 2003); *Alexander*, 226 S.W.2d at 998; *see also* Patrick J. Dyer, *A Practical Guide to the Equitable Bill of Review*, 70 Tex. B.J. 20, 22 (2007). Unless otherwise specified by statute, equitable bills of review carry a four-year statute of limitations. *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) (citing TEX. CIV. PRAC. & REM. CODE § 16.051).

Statutory bills of review are more scarce, existing predominantly in the probate and guardianship contexts. *See, e.g.*, TEX. ESTATES CODE §§ 55.251, 202.203, 1056.101; *cf.* TEX. CODE CRIM. PROC. art. 22.17. At all times relevant to this proceeding, section 31 of the Texas Probate Code allowed for a statutory bill of review in connection with probate proceedings, providing:

> Any person interested may, by a bill of review filed in the court in which the probate proceedings were had, have any decision, order, or judgment rendered by the court, or by the judge thereof, revised and corrected on showing error therein; but no process or action under such decision, order or judgment shall be stayed except by writ of injunction, and no bill of review shall be filed after two years have elapsed from the date of such decision, order, or judgment.

FORMER TEX. PROB. CODE § 31 (current version at TEX. ESTATES CODE § 55.251).  In contrast to equitable bills of review, section 31 has been interpreted to require a showing of "substantial error" in a prior decision, order, or judgment.  *See, e.g.*, *Nadolney v. Taub*, 116 S.W.3d 273, 278 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("The purpose of a section 31 bill of review is to revise and correct errors, not merely to set aside decisions, orders, or judgments rendered by the probate court."); *McDonald v. Carroll*, 783 S.W.2d 286, 288 (Tex. App.—Dallas 1989, writ denied); *cf. Norton v. Cheney*, 161 S.W.2d 73, 74 (Tex. 1942) (holding that standard for obtaining equitable bill of review did not apply to statutory bill of review in guardianship proceeding, citing *Jones v. Parker*, 3 S.W. 222, 224 (Tex. 1886)).  Fidelity and Valdez contend the Legislature intended section 31 to displace equitable bills of review in probate proceedings, but to the extent it does not, they argue the statute plainly establishes the outer temporal limits for attacking a probate judgment.  *Cf. Gramercy Ins. Co. v. State*, 834 S.W.2d 379, 381 (Tex. App.—San Antonio 1992, no pet.) (holding that the Legislature intended to abrogate equitable-bill-of-review requirements when it enacted the special statutory bill of review in TEX. CODE CRIM. PROC. art. 22.17).

## B.  Applicable Statute of Limitations

Whether section 31 prescribes the applicable statute of limitations presents a matter of statutory construction, which we review *de novo*.  *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008).  In doing so, we construe the words of the statute according to their plain meaning and within their contextual environs.  *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004).

Enacting statutes of limitations is a legislative prerogative.  *S.V. v. R.V.*, 933 S.W.2d 1, 3 (Tex.

13

1996). The purpose of a limitations period is to "establish a point of repose and to terminate stale claims." *Id.* (citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990)). Bills of review are subject to statutes of limitations, but the limitations period depends on the legal context. The Legislature has provided a default limitations period of four years if no express limitations period has been specified for a particular cause of action: "Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.051. The four-year residual statute of limitations typically applies to bills of review. *Caldwell*, 975 S.W.2d at 538.

When the Legislature has declared an express limitations period, however, the more specific time limit controls. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE §§ 16.002-.072 (prescribing limitations periods of one to five years for various common-law causes of action); *Williams v. Khalaf*, 802 S.W.2d 651, 654 n.3 (Tex. 1990) (listing a multitude of statutory alterations to the residual four-year limitations period). The Legislature has done so here.

As part of a comprehensive statutory scheme governing the probate process, the Legislature authorized an interested party to seek a bill of review, but affirmatively declared "no bill of review shall be filed after two years have elapsed from the date" of a probate court decision, order, or judgment. FORMER TEX. PROB. CODE § 31. Without regard to whether the Legislature intended to abrogate equitable bills of review in the probate context—which we need not decide—section 31 unequivocally prescribes a two-year limitations period for all bills of review in probate proceedings. The statute neither provides nor suggests different limitations periods for bills of review in the probate

14

context.  Absent an absurd or unreasonable result, we must give effect to the statute's plain language. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

Our plain-language reading of section 31 is reinforced when the statute is viewed within the context of the Probate Code.  *See, e.g.*, *CHCA Woman's Hosp. v. Lidji*, 403 S.W.3d 228, 231-32 (Tex. 2013) (citing the well established statutory-construction canon requiring consideration of statutory language in the context of the entire statutory scheme).  The Legislature has rarely prescribed express limitations periods for bills of review but did so several times in the Probate Code and carried those limitations forward when the Probate Code was recently recodified as the Texas Estates Code.  *See* FORMER TEX. PROBATE CODE §§ 31 (prescribing two-year limitations period for bills of review), 55 (heir not properly served in an heirship proceeding to file a bill of review within four years or "after the passage of any length of time" with "proof of actual fraud"), 657 (bill of review in guardianship proceeding cannot be filed more than two years from the date of the decision, order, or judgment, or more than two years after the date a disability is removed); *see also* TEX. ESTATES CODE §§ 55.251, 202.203, 1056.101; *cf. id.* § 256.204 (limiting will contest to two years or two years after discovering fraud or forgery).  These express references to statutes of limitations for bills of review reflect legislative concern for the orderly administration of estates and finality of judgments and are consistent with the "strong public interest in according finality to probate proceedings," which has been afforded great weight in our precedent.  *Little*, 943 S.W.2d at 418-21 (concluding that the discovery rule does not apply to adoptees' belated inheritance claims despite the inherent difficulty of promptly asserting such claims); *see Frost Nat'l Bank*, 315 S.W.3d at 497 (holding that "the discovery rule does not apply to . . . bill of review claims to set aside probate judgments").

15

Construing section 31 as prescribing a two-year limitations period for bills of review is neither patently absurd nor unreasonable in the statutory context.[11]

Accordingly, we conclude the two-year statute of limitations prescribed in section 31 applies and the heirs' bill of review was untimely unless (1) the limitations period was tolled *and* (2) the heirs filed their petition for bill of review within two years from the date the injury was discoverable or the

---

[11] Interpretative commentary accompanying the enactment explains that section 31 was adopted to (1) address case law calling into question whether a probate court could entertain a bill of review to revise a probate decision and (2) resolve disagreement among Texas courts as to whether limitations for filing a bill of review in a probate proceeding was two years or four years. The commentary explains:

> A former statute authorized the use of bills of review in connection with guardianships. Because of the decision in Heath v. Layne, 62 T. 686 (1884), doubt has existed whether bills of review could be used in connection with estates of decedents, although the courts have recognized that, either by such bills or by similar procedure, judgments could be revised or corrected if fraud, accident, mistake, or lack of jurisdiction was shown. Under the [Probate] Code, it would seem that bills of review are now fully applicable to judgments affecting estates of decedents.

> Under the former statute, some courts held that the limitation period for obtaining a bill of review was two years, while other courts held that the period was four years. This Section resolves the conflict by specifying two years.

> The proviso was added to harmonize this Section with the Section dealing with certiorari.

*Interpretive Commentary to* Tex. Probate Code § 31 (West 1956) (citing *Heath v. Layne*, 62 Tex. 686, 695 (Tex. 1884), in which the Court declared: "Except as it is given by statute, a probate court has no power by bill of review to revise its own decisions. The laws provide that this shall be done by some appellate proceeding in the district courts.").

Authorizing a bill of review in probate proceedings and prescribing a limitations period was a substantive addition in the 1955 codification of the Probate Code, which was otherwise predominantly nonsubstantive. R. Dean Moorhead, *Forward to* Tex. Rev. Civ. Stats. Vol. 17A, Probate Code at IV -VI (West 1956) ("95% of the Code consists of a reenactment of the former statutes" but in addition to "other important changes and additions," "[t]he period for obtaining a bill of review has also been set at two years . . . ."); *see also Probate Code Institute*, 18 Tex. B.J. 373, 374 (1955) ("Some Texas courts hold that a bill of review can be had at any time within 4 years, while other courts hold that the period is 2 years. Section 31 eliminates this conflict and harmonizes bills of review with certiorari by adopting the 2-year period."); *Cluck v. Hester*, 521 S.W.2d 845, 848 (Tex. 1975) (recognizing that appeal and certiorari were concurrent and alternative remedies and explaining that appeal to the district court was a true trial *de novo* whereas "certiorari reviews the action of the probate court for errors committed by that court . . . de novo, but the issues are confined to errors of the county court specifically set forth in the application for the [writ of error]"); *Lechow v. Moore*, 524 S.W.2d 614, 615 n.1 (Tex. Civ. App.—Austin 1975, no writ) (explaining that before section 30 of the Texas Probate Code was repealed "[p]robate proceedings in the county court [could] be reviewed in district court by way of writ of certiorari").

estoppel effect of tolling ceased.

## C. Tolling

Unless an accrual date is prescribed by statute, "[c]auses of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011). Thus, a cause of action generally accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *See Trinity River Auth. v. URS Consultants, Inc*., 889 S.W.2d 259, 262 (Tex. 1994). When a cause of action accrues is typically a question of law. *Exxon Corp.*, 348 S.W.3d at 202.

We have recognized two doctrines that may delay accrual or toll limitations: (1) the discovery rule and (2) fraudulent concealment. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927, 929-30 (Tex. 2011). The discovery rule applies on a categorical basis to injuries that are both inherently undiscoverable and objectively verifiable. *Id.* at 930 (citing *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001)). When applicable, the discovery rule "defers the accrual of the cause of action until the injury was or could have been reasonably discovered." *Shell Oil Co.*, 356 S.W.3d at 929-30. As we have observed, "Texas courts have refused to apply the discovery rule to claims arising out of probate proceedings in most instances . . . even in the face of allegations of fraud." *Little*, 943 S.W.2d at 420 (declining to apply the discovery rule to inheritance claims of adopted children); *see Frost Nat'l Bank*, 315 S.W.3d at 497 ("[W]e hold that the discovery rule does not apply to . . . bill of review claims to set aside probate judgments.").

Unlike the discovery rule's categorical approach, fraudulent concealment is a fact-specific

17

equitable doctrine that tolls limitations until the fraud is discovered or could have been discovered with reasonable diligence. *Shell Oil Co.*, 356 S.W.3d at 927. When a defendant is under a duty to make a disclosure but conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should reasonably have discovered it. *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983); *see Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008). Texas courts have long recognized that "fraud vitiates whatever it touches," and we have consistently held that "a party will not be permitted to avail himself of the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations." *Borderlon*, 661 S.W.2d at 908-09. However, "the legal effect of that concealment does not extend the limitations period indefinitely." *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011). Rather, "[t]he estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to the discovery of the concealed cause of action." *Borderlon*, 661 S.W.2d at 909. "Knowledge of such facts is in law equivalent to knowledge of the cause of action." *Id.*

Extending the time period for avoiding or altering a judgment is inherently antagonistic to the systemic need for finality of judgments, which we have observed with particularity in the probate context. *See, e.g.*, *Little*, 943 S.W.2d at 417 ("The need for finality of probate proceedings is well-recognized by this and other courts."); *see also Robinson v. Weaver*, 550 S.W.2d 18, 20 (Tex. 1977) ("The fact that a meritorious claim might thereby be rendered nonassertible is an unfortunate, occasional by-product of the operation of limitations."). Bills of review are intrinsically incongruous

18

with finality, and thus, are not lightly granted. *Frost Nat'l Bank*, 315 S.W.3d at 510 ("We have long recognized the importance of according finality to judgments, and accordingly we have held courts to stringent bill of review standards to protect that policy favoring finality."). Indeed, we pointedly acknowledged in an early bill of review case that "'[e]ndless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice.'" *Alexander*, 226 S.W.2d at 998 (quoting *Pico v. Cohn*, 25 P. 970, 971 (Cal. 1891)).

To the extent we have expressed an elevated concern for finality of probate judgments, our interest is hardly idiosyncratic. As the United States Supreme Court has held, "[a]fter an estate has been finally distributed, the interest in finality may provide an additional, valid justification for barring the belated assertion of claims," even if the claims have merit and "even though mistakes of law or fact may have occurred during the probate process." *Reed v. Campbell*, 476 U.S. 852, 855-56 (1986) (involving a Texas estate); *see also Lalli v. Lalli*, 439 U.S. 259, 268 (1978) (recognizing that a state's interest in providing for the just and orderly disposition of property at death is "of considerable magnitude."). Circumscribing the reach of limitations-tolling doctrines applicable to bills of review necessarily strengthens finality and reduces the prospect of delayed attacks on judgments.

For this reason, we have declined to apply the discovery rule to extend limitations in probate cases involving inheritance and heirship claims. Bernard's heirs contend, however, that the unavailability of tolling is constrained to those contexts. According to the heirs, a different result obtains when violations of fiduciary duties and fraudulent concealment are at issue or when an attack on finality involves missing or undistributed assets.

19

A fiduciary relationship gives rise to a duty of full disclosure of all material facts. *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 699 (Tex. 2000). A person to whom a fiduciary duty is owed may be unable to inquire into the fiduciary's actions or may be unaware of the need to do so. *See S.V.*, 933 S.W.3d at 8. Moreover, even if inquiry is made, "[f]acts which might ordinarily require investigation likely may not excite suspicion where a fiduciary relationship is involved." *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988). Still, when the fact of misconduct is evident, diligent inquiry is required. *S.V.*, 933 S.W.2d at 8.

While we have not expressly considered the fiduciary-duty and fraudulent-concealment overlay in the probate context, we do not reach the issue here because the heirs had sufficient information to place them on inquiry notice at least three years before they initiated bill-of-review proceedings. Accordingly, the petition for bill of review was untimely even if limitations were tolled.

As early as March 2003 and as late as August 2003, the heirs were informed that the Bernard estate had been substantially undervalued. Rishebarger wrote Bernard's heirs a letter, dated April 21, 2003, alerting them to Spillman's plundering of the estate. Rishebarger disclosed that "[t]he purpose of this letter is to inform you of the possible value of the claim of the Decedent of whom you inquired, and the procedure that must be followed in order to present the claim." Rishebarger's communication referenced exhibits identifying the estimated value of the assets Spillman misappropriated from the estate and the potential restitution amount. The letter further outlined the process by which the heirs could submit a claim, and closed by advising that although not required, "it is highly recommended that you retain an attorney."

In August 2003, Rishebarger reported to the district court the precise amount Spillman had

stolen from the Bernard estate. Importantly, this report, which was served on Bernard's heirs, indicates the Bernard estate was undervalued by $522,834.79. If there was otherwise any doubt, the August 2003 report made clear that the assets on hand at Bernard's death vastly exceeded the amounts stated in the March 1994 inventory. A half-million-dollar discrepancy is considerable and gives rise to a duty to make further inquiry. Rishebarger's calculations identify each bank account Bernard held at the time of his death and the balance on that date. Though it is unclear when that specific information was provided to the heirs, the record plainly reflects that the information was available had they asked.

While later acquiring the 1993 tax return may have been helpful, a reasonably prudent person would have inquired about the grave disparity between the amount of assets distributed in the probate proceedings and the funds reported to have been in existence at the time of Bernard's death. The 1993 tax return merely shows interest earned on various accounts at some point during the tax year preceding Bernard's death; in comparison, Rishebarger's report affirmatively identifies the actual assets Bernard owned at his death that were not distributed in the probate proceeding. Receipt of this information was sufficient to trigger inquiry notice and restart limitations to the extent of any tolling. Although the heirs argue there was uncertainty about whether Spillman's theft occurred before or after Valdez's appointment, the 1993 tax return is no more enlightening in that regard.

The heirs' claims were discoverable and the estoppel effect of tolling ceased more than two years before they initiated bill-of-review proceedings. Accordingly, their bill of review was time-barred.

### III. Conclusion

The heirs' petition for bill of review was filed more than two years after they received information that would cause a reasonably prudent person to make inquiry, which if pursued would lead to the discovery of the concealed cause of action. *See Etan Indus.*, 359 S.W.3d at 623; *Shell Oil Co.*, 356 S.W.3d at 927, 929-30. Accordingly, without considering the merits of the bill of review or the underlying claims, we reverse the court of appeals' judgment and render judgment in Valdez's and Fidelity's favor on the bill of review.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED**: June 12, 2015

22