**Reversed and Remanded and Opinion Filed May 3, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01557-CV**

**CRAIG PATRICK POWER, Appellant**
**V.**
**BRADEN RICHARD POWER, Appellee**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-14415**

## MEMORANDUM OPINION

Before Justices Molberg, Nowell, and Goldstein
Opinion by Justice Nowell

This appeal aris es from a dispute between brothers Craig Patrick Power and

Braden Richard Power[1] who worked together to develop real estate. Craig appeals

from the trial court's judgment entered following a jury trial. In seven issues, Craig

argues: (1) Braden lacked capacity to recover the damages he sought; (2) Braden's

claims are barred by the applicable statutes of limitations; (3) testimony by Braden's

damages expert was inadmissible and legally insufficient to support the verdict and

judgment; (4) the jury's answers to Questions 12(b) and 12(c) should be disregarded;

---

[1] Because the parties have the same surname, we will refer to them by their first names.

(5) the trial court abused its discretion by imposing a constructive trust on Craig's trust; (6) the trial court abused its discretion by admitting evidence of spoliation and instructing the jury on spoliation; and (7) the attorney's fees awarded to Braden are erroneous. We reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

## Factual Background

In the mid-1990s, the brothers began developing apartment complexes together, and they eventually acquired, developed, and managed more than thirty properties. Several years later, the brothers also began developing condominiums. Overall, their real estate business was successful. For each property they developed, the brothers formed a Texas-based entity (collectively the Jointly Owned Entities). With one exception, the brothers (either individually or through their respective trusts) each own fifty percent of each of the Jointly Owned Entities. One Jointly Owned Entity, Power Property Management, Inc. (PPM), provided property management services for the other Jointly Owned Entities.

Testimony at trial showed Craig, who has a master's degree in accounting, primarily was responsible for operating the business while Braden primarily was responsible for designing and overseeing the renovations of the older buildings the brothers purchased. Braden testified he began inquiring about the finances of the Jointly Owned Entities in 2011, and he asked Craig and their CPA for a "reconciliation about everything that's happened." Braden received that

–2–

reconciliation in December 2013. Braden then decided to investigate the finances of the Jointly Owned Entities himself and, after doing so, Braden concluded Craig had, among other things, diverted a higher share of distribution income from the Jointly Owned Entities to himself and failed to disclose the true amount of profits the Jointly Owned Entities earned on an annual basis.

Braden in his individual capacity sued Craig in his individual capacity for breach of fiduciary duty, fraud, fraud by non-disclosure, statutory fraud, breach of contract, and civil theft. Craig asserted counterclaims for breach of fiduciary duty and set-off. At trial, the jury found, among other things, that the brothers created a partnership to purchase, develop, and sell properties; a relationship of trust and confidence existed between the brothers; Craig managed the accounting, books, and records for their relationship upon which Braden justifiably relied; Craig did not comply with his fiduciary duty to Braden; Braden failed to comply with his fiduciary duty to Craig; and Craig committed fraud by nondisclosure and civil theft. The trial court entered judgment following the trial, and this appeal followed.

LAW & ANALYSIS

A.    **Braden's Capacity to Recover Damages**

In his first issue, Craig argues Braden lacked capacity to recover the damages Braden sought because the alleged damages resulted from injuries incurred solely

by the Jointly Owned Entities or the partnership found by the jury.[2] In response, Braden argues Craig did not appeal the jury's finding that the brothers formed a partnership, and the Texas Business Organizations Code permits one partner to maintain an action against another partner.

"Whether a claim brought by a partner actually belongs to the partnership is . . . a matter of capacity because it is a challenge to the partner's legal authority to bring the suit." *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 779 (Tex. 2020). Section 152.210 of the Texas Business Organizations Code provides that one partner is liable to other partners for violating a duty to the other partners that causes harm to the other partners. TEX. BUS. ORGS. CODE § 152.210(2). A partner owes other partners a duty of care. *See id*. § 152.204(a)(2). A partner's duty of care to other partners "is to act in the conduct and winding up of the partnership business with the care an ordinarily prudent person would exercise in similar circumstances." *Id.* § 152.206(a). A partner shall discharge his duties to the partnership and other partners in good faith and in a manner the partner reasonably believes to be in the best interest of the partnership. *Id.* § 152.204(a), (b).

Section 152.211 delineates the authority of partners and partnerships to bring claims and seek various remedies. *Pike*, 610 S.W.3d at 779-80. Section 152.211 provides that one partner "may maintain an action against . . . another partner for

---

[2] The parties dispute whether Craig properly preserved this argument for appeal. For purposes of our analysis, we will assume without deciding that it was preserved.

legal or equitable relief" to, among other things, enforce a partner's rights under Sections 152.204 and 152.206 and to "enforce the rights and otherwise protect the interests of the partner, including rights and interests arising independently of the partnership relationship." *See* TEX. BUS. ORGS. CODE § 152.211(b)(2)(A), (b)(3).

The jury found Craig and Braden created a partnership to purchase, develop, and sell properties. Craig does not challenge this finding and, thus, it is binding on this Court. *See Daugherty v. Highland Capital Mgmt., L.P*., No. 05-14-01215-CV, 2016 WL 4446158, at *5 (Tex. App.—Dallas Aug. 22, 2016, no pet.) (mem. op.) (citing *Carbona v. CH Med., Inc*., 266 S.W.3d 675, 687 (Tex. App.—Dallas 2006, no pet.)). As a partner, Craig owed a duty of care to Braden, *see* TEX. BUS. ORGS. CODE § 152.206(a), and was required to discharge his duties to Braden in good faith, *see id.* § 152.204(a), (b). The business organizations code allowed Braden to maintain an action against Craig for relief from Craig's violations, if any, of these duties and to enforce and protect his interest as a partner. Braden did just that.

Braden in his individual capacity sued Craig in his individual capacity for breach of fiduciary duty, fraud, fraud by non-disclosure, statutory fraud, and civil theft alleging Braden was injured by Craig's actions. Braden produced evidence showing that Craig failed to pay Braden his proportionate share of profits generated by the partnership and made false representations to Braden about the financial condition of their businesses. In doing so, Craig breached his duty of care to Braden and caused injury to Braden. Braden's alleged damages were suffered by him

personally rather than by the partnership. Thus, Braden had capacity to assert the claims he did. We note that Braden did not claim, for example, that Craig's actions reduced the value of the partnership or devalued his ownership interest, which would be an injury to the partnership. Rather, he contended Craig hid assets from him and failed to pay him his share of the partnership profits. Any recovery Braden sought was not a partnership asset; it was his individual share of the partnership assets that Craig allegedly took and to which Braden personally was entitled. We overrule Craig's first issue.

### B.    Statutes of Limitations

In his second issue, Craig argues Braden's claims are barred by the applicable statutes of limitations because the evidence conclusively establishes Braden knew or should have known about the facts giving rise to his claims more than four years before he filed suit on November 27, 2015. In response, Braden argues the jury was properly instructed on the tolling doctrine of fraudulent concealment, and considering the jury instruction, the evidence supports the jury's findings that limitations was tolled until December 31, 2013.

As a general matter, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a claimant to seek a judicial remedy. *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). The supreme court recognizes two doctrines that may delay the accrual or toll limitations:

(1) the discovery rule[3] and (2) fraudulent concealment. *Id.* Fraudulent concealment is a fact-specific equitable doctrine that tolls limitations until the fraud is discovered or could have been discovered with reasonable diligence. *Id.* When a defendant has a duty to make a disclosure but instead conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should reasonably have discovered it. *Id.* at 229–30. "[F]raud vitiates whatever it touches," and the supreme court has held that "a party will not be permitted to avail himself of the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations." *Id.* at 230.

The existence of a fiduciary relationship may affect a person's ability to discover a concealed cause of action. *See id.* at 231. "A person to whom a fiduciary duty is owed may be unable to inquire into the fiduciary's actions or may be unaware of the need to do so." *Id.* "Moreover, even if inquiry is made, facts which might ordinarily require investigation likely may not excite suspicion where a fiduciary relationship is involved." *Id.* (cleaned up). However, once the misconduct is evident, diligent inquiry is required. *Id.*

Braden's claims are subject to two-year and four-year statutes of limitations. *See* Tex. Civ. Prac. & Rem. Code §§ 16.003(a) (two-year limitations period),

---

[3] The discovery rule is not at issue in this appeal.

–7–

16.004(a) (four-year limitations period). Braden filed this lawsuit on November 27, 2015. Relevant to this issue, the jury made the following findings, which have not been challenged on appeal: (1) a relationship of trust and confidence existed between Craig and Braden; (2) Craig did not comply with his fiduciary duty to Braden; (3) Craig managed the accounting, books, and records for the brothers' relationship upon which Braden justifiably relied; and (4) Craig committed fraud by nondisclosure.[4] Additionally, the jury found that, in the exercise of reasonable diligence, Braden should have discovered Craig's breach of fiduciary duty and fraud by non-disclosure by December 31, 2013.[5]

Despite the jury's findings, Craig argues that the evidence conclusively establishes that Braden knew or should have known of the conduct giving rise to his claims "*long before*" November 2011 or more than four years before the lawsuit was filed. Craig asserts that Braden had access to the books and records of the Jointly Owned Entities before November 2011 in his capacity as an owner, shareholder,

---

[4] The jury charge states that fraud by non-disclosure occurs when a party fails to disclose a material fact within the knowledge of that party, the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, the party intends to induce the other party to take some action by failing to disclose the fact, and the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

[5] Jury Question 21 states:

> By what date should Braden Power, in the exercise of reasonable diligence, have discovered the conduct complained of with respect to the following claims?
> You are instructed that fraudulent concealment tolls limitations until the plaintiff discovers the fraud or could have discovered the fraud with reasonable diligence. To establish fraudulent concealment, the plaintiff must show the defendant actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong from the plaintiff.

The jury answered with the date December 31, 2013, with respect to breach of fiduciary duty, justifiable reliance, fraud, fraud by nondisclosure, statutory fraud, and civil theft.

officer, member, partner, director, or manager of the entities. Further, Craig argues, the evidence shows that, as early as 2005, Braden claimed he was being treated unfairly by Craig, which was why the brothers hired a CPA in 2006 to analyze their financial records.

Craig's argument disregards the jury's unchallenged findings (discussed above) and Braden's testimony. As a fiduciary, Craig had a duty to make full disclosure of all material facts to Braden. *See Valdez*, 465 S.W.3d at 230. However, the jury found that despite Braden's justifiable reliance on Craig to do so, he did not disclose all material facts even though he managed the accounting, books, and records.

At trial, Braden testified that Craig failed to disclose information to him and instead sought to placate Braden. Braden testified he did not know how their accounting functions within the business were managed or how the documentation was maintained. Evidence showed the brothers' money was comingled and, for a long time, they did not maintain separate accounts for each of the Jointly Owned Entities. Craig was responsible for tracking how much of the money in the comingled account belonged to each brother.

In 2008, Craig told Braden the businesses were having financial problems, but he also told Braden that all of the relevant financial information was stored in the company's bookkeeping software. Further, Craig told Braden that "[w]e're going to get this reconciled and I'll treat you fairly. But we just have to get through this."

Braden believed that Craig would "figure it out." In December 2008, Craig sent an email to Braden stating: "Braden, I want you to know we are in this together and that I love you." Braden testified Craig's email made him "feel safe."

Braden testified he began asking questions about their finances in 2011. He asked for a "reconciliation about everything that's happened," particularly related to the finances of their last three condo projects. However, the more questions he asked, "the more places I kept being sent to." He continued asking for a reconciliation, but did not receive one until December 2013. Until he received the reconciliation, Braden allowed Craig to maintain financial control. Braden testified that, during that time, Craig did not fully disclose the financial information related to the businesses. Although Craig argues Braden had access to all financial information, an email from November 2013 indicates Braden did not have an account to access the financial information maintained by PPM, which managed the properties for all of the Jointly Owned Entities.

Braden testified that even after he received the reconciliation in December 2013 and he asked Craig more questions, Craig did not provide information to him. Beginning in 2014, Braden realized the finances were "the Pandora's box. Basically one thing every day that I was learning about the fraud my brother was doing to me." Braden then began his own investigation.

In light of the jury charge as given, the jury's unchallenged findings, and the evidence presented at trial, we conclude the evidence does not conclusively establish

Braden knew, or in the exercise of ordinary diligence should have known, about his causes of action more than two or four years before this lawsuit was filed. Rather, the jury could have concluded Braden, in the exercise of reasonable diligence, should not have discovered Craig's conduct before December 31, 2013, and Craig's fraudulent concealment, as defined in the jury charge, tolled the statute of limitations until that time. We conclude the evidence is legally sufficient to support the jury's answer that, in the exercise of reasonable diligence, Braden should have discovered Craig's breach of fiduciary duty and fraud by non-disclosure on December 31, 2013. We overrule Craig's second issue.

### C.    Spoliation Evidence & Jury Instruction

In his sixth issue, Craig argues the trial court abused its discretion by admitting evidence of spoliation and instructing the jury on spoliation. In response, Braden argues the instruction is not a spoliation instruction and is not a sanction for misconduct.

Braden testified that Craig was responsible for operating the business and managing financial aspects of the brothers' ventures. Over Craig's objection, the jury heard testimony from Chenoa May, a PPM employee who worked in accounts payable. May testified the process for managing invoices changed in 2013, and PPM adopted a paperless system. About six to twelve months after implementing the new system, she asked Craig if she could dispose of old invoices that dated back to 2003, and Craig gave permission to do so. May explained a paper shredding company

collected about ten banker's boxes or four filing cabinets of old invoices. However, she did not destroy "important files," including files relating to Craig's and Braden's personal matters, mortgage statements, and insurance.

In the jury charge, the trial court instructed:

> Invoices and documents which would demonstrate or reflect expenses relating to Craig Power and Braden Power [sic] real estate transactions have been destroyed.
> You may consider that the invoices, documents, and records destroyed would have been unfavorable to the party who destroyed the invoices, documents, and records on the issues of whether the party complied with the party's legal duties and the failure to properly account for money under the party's care and control.

Braden argues this instruction is not a spoliation instruction because it does not indicate a particular party destroyed documents. Although the instruction does not identify which party destroyed documents, all evidence and arguments presented to the jury show that Craig (or those working for him) destroyed the documents at issue. The evidence shows Craig had primary responsibility operating the business, including managing Chenoa May. May testified she asked Craig's permission to destroy the documents, and he gave it. No witnesses testified that Braden authorized any document destruction. Additionally, Braden's counsel specifically informed the jury that Craig destroyed documents. For example, in Braden's opening statement, his lawyer told the jury:

> So in 2014 and 2015 when you have additional forensic accountants coming in to try to see what's going on, you're going to hear testimony that Craig approved and ordered the destruction of four

file [sic] cabinets full of documents, invoices, receipts, checks. That's what the testimony's going to be.

And so what you're going to have is when we talked about the Yardi [sic],[6] the books and the records, you're going to hear that the books are not reliable. And the way you verify and test, check, confirm, is you go back and you have to rebuild from the underlying hard records, the checks, the invoices, other things like that.

Why in the world when two, three accountants are coming in and asking questions and telling you that that's exactly what you need, why did he destroy those documents? He's going to tell you, oh, we were going to electronic files. My understanding of electronic files is I can go electronic, but I certainly keep everything that I had before. Moving to an electronic-based system is a conversion, not an I'm-going-to-take-everything-that-came-before-and-chunk-it-out-the-window.

Likewise, during his closing statement, Braden's counsel drew the jury's attention to the court's instruction about destroyed documents and told the jury: "that destruction of documents alone is a breach of fiduciary duty. Because nobody can go back and undestroy those documents."

Based on the evidence and arguments presented at trial, we conclude the evidence pointed to Craig (or those working for him) destroying documents, but no evidence indicated Braden (or those working for him) destroyed documents. Accordingly, in this case, the fact the instruction does not specifically name Craig is not determinative.

We review a trial court's imposition of a spoliation remedy, including the submission of a spoliation instruction to the jury, for an abuse of discretion.

---

[6] Yardi is the accounting software used by PPM.

*Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014). We also evaluate the court's admission of evidence under an abuse-of-discretion standard. *Id.*

A spoliation jury instruction is a "severe spoliation sanction" that can shift the focus of the case from the merits to improper conduct allegedly committed by one party during the litigation. *Id.* at 13. "The problem is magnified when evidence regarding the spoliating conduct is presented to a jury." *Id.* Presenting spoliating conduct to the jury can unfairly skew a jury verdict, resulting in a judgment that is based on the conduct of the parties during or in anticipation of litigation rather than the facts of the case. *See id.* at 13–14.

Before allowing spoliation evidence to be presented to the jury, the trial court must perform a two-step spoliation analysis: (1) the trial court must determine, as a question of law, whether a party spoliated evidence, and (2) if spoliation occurred, the court must assess an appropriate remedy. *Id*. at 14. To conclude a party spoliated evidence, the trial court must find (1) the spoliating party had a duty to reasonably preserve evidence, and (2) the party intentionally or negligently breached that duty by failing to do so. *Id.* Spoliation findings must be made by the trial court outside the presence of the jury. *Id.*

The record does not show the trial court performed the two-step spoliation analysis. The trial court made no finding that a party, presumably Craig, had a reasonable duty to preserve evidence and intentionally or negligently breached that duty by failing to do so. *See id.* The trial court was required to make these findings

before permitting spoliation evidence to be presented to the jury. *See id.* Because the trial court did not make the required findings, we conclude the trial court abused its discretion by admitting spoliation evidence and subsequently giving the spoliation instruction.

However, we will reverse the trial court's judgment on account of these errors only if they "probably caused the rendition of an improper judgment." *Id.* at 29 (quoting TEX. R. APP. P. 61.1(a)); *see also* TEX. R. APP. P. 44.1(a) (reversible error in civil cases). "[I]f a spoliation instruction should not have been given, the likelihood of harm from the erroneous instruction is substantial, particularly when the case is closely contested." *Brookshire Bros.*, 438 S.W.3d at 29. Such a likelihood of harm exists in this case.

Both liability and the extent of each party's damages, if any, were closely contested at trial, and Braden emphasized the spoliation issue. Craig and his expert maintained Braden was owed less than $400,000 from the Jointly Owned Entities, while Braden's expert put that number at nearly $14 million. Craig argued Braden had access to all documents and accounting records and the brothers shared responsibility for operating the business; Braden maintained Craig controlled the businesses' finances and Braden limited his role to the creative, development, and property management aspects of the businesses. In opening and closing arguments, Braden's counsel informed the jury that Craig destroyed documents and even told the jury that the destruction of documents was a breach of Craig's fiduciary duty.

–15–

The jury concluded Craig failed to comply with his fiduciary duty to Braden, and the jury assessed damages.

In light of the contested liability and damages, Braden's counsel's opening and closing statements, and the spoliation evidence presented and jury instruction given without the requisite findings, we conclude the likelihood of harm from the erroneous admission of evidence and jury instruction is substantial. "[I]t is 'very difficult to overlook the likely impact' of the spoliation evidence and the instruction" in this case. *See id.* (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 883–84 (Tex. 2014)). We conclude the trial court's errors probably caused the rendition of an improper judgment. We sustain Craig's sixth issue.

### D. Unaddressed Issues

In light of our resolution of Craig's first, second, and sixth issues, we need not address the arguments Craig raises in his third, fourth, fifth, and seventh issues. *See* TEX. R. APP. P. 47.1.

CONCLUSION

Having concluded Braden had capacity to sue Craig, the statutes of limitations had not run on Braden's causes of action, and the trial court's admission of spoliation evidence and corresponding jury instruction probably caused the rendition of an

improper judgment, we reverse the trial court's judgment and remand the case to the trial court for a new trial.

191557f.p05

/Erin A. Nowell//

ERIN A. NOWELL
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CRAIG PATRICK POWER,
Appellant

No. 05-19-01557-CV     V.

BRADEN RICHARD POWER,
Appellee

On Appeal from the 134th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-15-14415.
Opinion delivered by Justice Nowell.
Justices Molberg and Goldstein
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for a new trial.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 3rd day of May 2022.