

# NUMBER 13-20-00301-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## ESTATE OF C.E. ERWIN, DECEASED

On appeal from the County Court at Law No. 2
of Victoria County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva**
**Memorandum Opinion by Justice Silva**

Appellants C.E. "Trey" Erwin III, Will Erwin, and Nannie Reinert appeal the trial court's order granting a motion for summary judgment filed by appellee Peggy Redding, individually and as administrator of Bettye M. Erwin's estate and administrator of C.E. Erwin's estate. By what we construe and reorganize as three issues with multiple subparts, appellants argue that the trial court erred (1) in granting Redding's traditional motion for summary judgment based on the statute of limitations; (2) in denying their partial motion for summary judgment; and (3) in denying their motion to compel

accounting of the trusts by Redding. We affirm in part, and reverse and remand in part.

## I.    BACKGROUND

### A.    C.E. Erwin's Estate

C.E. Erwin, passed away on October 17, 1993. At the time of his passing, C.E. was married to Bettye and had three children: Redding, Carolyn Sue Fitzgerald, and Clarence E. Erwin Jr. C.E. left a will appointing Bettye as independent administrator of the will. The will named American Bank of Commerce[1] as successor administrator should Bettye be unwilling or unable to serve as administrator.

The will bequeathed to Bettye "all of the household furniture and articles of domestic or personal use or adornment[,] . . . the automobile used primarily by [C.E. and Bettye] at the time of [his] death[,]" and "any community interest . . . in joint bank accounts." The will also established two testamentary trusts consisting of the remainder property, naming Bettye as the sole trustee.[2] American Bank of Commerce was designated as the successor trustee should Bettye become unable or unwilling to serve as trustee.

Trust A would receive "a share of or interest in [C.E.'s] estate equal in value to the maximum amount of the estate that would pass free of [any] estate taxes . . . ."[3] Bettye

---

[1] According to Trey's original petition, American Bank of Commerce merged with Bank of America, thus making Bank of America the successor in interest in accordance with the will.

[2] The will designated the trusts as "Trust A" and "Trust B."

[3] In 1993, the unified gift and estate tax exemption was $192,800. 26 U.S.C. § 2010(a) (1993). Accordingly, assuming no gift taxes were incurred during C.E.'s lifetime, $600,000 of his estate would not be subject to taxes upon transfer. *See id.*; *see also* Darien B. Jacobson, Brian G. Raub, Barry W. Johnson, *The Estate Tax: Ninety Years and Counting*, available at https://www.irs.gov/pub/irs-soi/ninetyestate.pdf (last visited October 19, 2021). The record is silent as to whether C.E. incurred any gift tax during his lifetime.

was permitted to select the specific asset or assets that would constitute the corpus of the trust, valued at the time of the transfer. The terms of Trust A required the net income of the trust to be paid to Bettye at least annually, and provided "no power of appointment during [Bettye's] lifetime, or by her Last Will and Testament, of any portion of the trust estate." Upon Bettye's death, the remainder of the trust was to be distributed equally to their children, but if a child predeceased her, the share would pass by representation and per stirpes.

The remainder of the estate, if any, would go to Trust B. The terms of Trust B required the net income to be paid to Bettye at least annually. The trust terms further allowed the trustee to pay Bettye "such sums from or such part of the principal of the trust, including the whole thereof, as [the trust] may, in the Trustee's sole discretion, determine to be necessary or desirable to permit [Bettye] to maintain her usual standard of living . . . ." The terms of Trust B did provide Bettye with the power of appointment, but if she failed to exercise that power, the remainder was to be used to pay various expenses for the administration, taxation, or other expense of Bettye's estate. Should any principal then remain, it would pass by representation per stirpes. The terms of the trusts required the trustee to maintain an accounting of all transactions and render statements of the accounting at least annually. The trustee was permitted to "sell or exchange any and all property, real or personal, on such terms as the Trustee may deem advisable." Although the terms permitted the trustee to hold trust property "with other trusts or estates in one or more common or commingled funds or accounts[,]" it required that the trust "have an undivided interest and be allotted its proportionate part of the income . . . ." Importantly,

3

the trust contained an exculpatory clause that stated "[t]he [t]rustee shall not be liable to any beneficiary hereunder except for gross negligence or willful misconduct."

The will was admitted to probate and Bettye was appointed independent administrator on November 22, 1993. On February 24, 1995, Bettye filed an inventory, appraisement, and list of claims, which was subsequently accepted by order of the court. According to the inventory, appraisement, and list of claims, the estate owned $31,016.00 in separate real property; $191,341.50 in community real property, encumbered by $243,920.00 debt on various pieces of real property; $14,362.50 in community personal property in the form of stocks; $314,992.50 in "cash and cash equivalent" encumbered by $190,619.00 debt on three certificates of deposit; and $16,562.50 in "miscellaneous property." Accordingly, the value of the estate was listed as $133,736.00. After the trial court's ruling accepting the inventory, appraisement, and list of claims, C.E.'s estate remained open, and nothing was filed until Redding sought to become the successor administrator in 2017.

## B.    Bettye M. Erwin Passed Away

Bettye passed away on August 29, 2016, and Redding was named independent administrator of Bettye's estate pursuant to her will. According to appellants' original petition, Redding filed an application to be named the successor independent administrator of C.E.'s estate on September 5, 2017. The trial court appointed Redding as the successor independent administrator of C.E.'s estate on September 27, 2017. Prior to Bettye's passing, two of her children, Carolyn Sue and Clarence, passed away, leaving

4

heirs of their own.[4]

## C.     Appellants' Suit

On June 1, 2018, Trey, Clarence's son, filed his original petition against Redding, both individually and as executor of Bettye's and C.E.'s estates seeking various forms of relief, including, but not limited to, an accounting of C.E.'s estate and the related testamentary trusts, removal of Redding as administrator, damages for violation of the Texas Theft Liability Act, damages for unjust enrichment, damages for breaches of fiduciary duty by both Bettye and Redding, punitive damages, and attorney's fees.

On May 7, 2020, a fourth amended petition was filed which included appellants Will and Nannie, also children of Clarence, as plaintiffs. The fourth amended petition includes various requests for declaratory relief, including a declaration that the trusts were created and exist, that Redding "is estopped from denying their existence[,]" that Bettye's comingling has rendered tracing impossible, and that "all assets purportedly in Bettye's estate are subject to and property of the Trusts" because of the impossibility of tracing. The petition specifies that Bettye breached her fiduciary duty to appellants, the remainder beneficiaries of the trusts, by: "(1) failing to properly account for the Trusts' assets; (2) irreversibly commingling the Trusts' assets with her own; and (3) selling and converting Trust assets to herself." The petition alleged Redding's breach of her fiduciary duties arose primarily as the successor administrator of C.E.'s estate by: "(1) failing and refusing to pursue the claims [C.E.]'s [e]state has against Bettye's [e]state; (2) transferring assets from [C.E.'s [e]state directly to herself to [appellants'] detriment; and (3) placing

---

[4] Appellants are Clarence's children. Clarence passed away on February 9, 2006, thus changing appellants' status from contingent beneficiaries to remainder beneficiaries of C.E.'s testamentary trusts.

her own pecuniary interests above those of [C.E.]'s [e]state and its beneficiaries."

Appellants also "request[ed] that the [trial] [c]ourt impose a constructive trust over all property belonging to [C.E.]'s estate and/or the [t]rusts titled in Bettye's or [Redding]'s name . . . ." Appellants' petition invoked both the discovery rule and fraudulent concealment, alleging their claims should not be barred by the applicable statutes of limitations.

Redding's original answer asserted multiple affirmative defenses, including: (1) statute of limitations barred appellants' claims; (2) appellants were estopped from bringing their claims; (3) that C.E.'s will had an exculpatory clause that relieved Bettye from liability; and (4) that the will allowed comingling of trust assets with Bettye's personal assets. Redding also objected to Trey's standing as a beneficiary of C.E.'s estate, asserting that Trey was a beneficiary of the trusts, not the will, and that he failed to plead that "such trustee either cannot or will not bring such claim or that the trustee has wrongfully refused to bring such claim." In Redding's first amended answer, she nonsuited the affirmative defenses of permissible comingling and estoppel but added that appellants' claims were barred by res judicata.

## D.    Redding's Traditional Motion for Summary Judgment

On January 22, 2020, Redding filed a traditional motion for summary judgment and motion for protective order. Redding argued that the appropriate time to start calculating the statute of limitations for all of appellants' claims began when C.E.'s will was admitted to probate in 1993, and she contended appellants' suit was therefore barred by limitations. In support of her motion, Redding attached: (1) the order admitting C.E.'s will to probate;

6

(2) the inventory, appraisement, and list of claims; (3) the order approving the inventory, appraisement, and list of claims; (4) the order admitting Bettye's will to probate; (5) the order appointing Redding as successor administrator for C.E.'s estate; and (6) appellants' second amended petition, which was the then-active petition in this suit.

Redding's request for an order of protection from requiring an accounting was also based on limitations as well as an assertion that she has not been appointed the successor trustee of C.E.'s testamentary trusts and is thus not the proper party from whom to demand an accounting. *See* TEX. PROP. CODE ANN. § 113.151(a).

## E.    Appellants' Traditional and No-Evidence Partial Motion for Summary Judgment

On April 22, 2020, appellants filed a motion for partial summary judgment on certain claims. Specifically, appellants sought summary judgment: (1) declaring that the trusts exist, and Bettye owed appellants fiduciary duties; (2) declaring that Bettye, as trustee, breached her fiduciary duties to appellants; (3) declaring that Redding, as successor administrator of C.E.'s estate, breached her fiduciary duty by transferring an asset of the estate to herself to the detriment of appellants; and (4)  in favor of appellants' on Redding's affirmative defenses. Appellants also requested the trial court impose a constructive trust "over all assets that Bettye possessed or had claim to immediately prior to her demise, together with all income generated by those assets since Bettye's demise," and order "a complete accounting of the Trusts for the period beginning at the Trusts' inception and continuing through the present . . . ."

In addition to the traditional summary judgment arguments, appellants sought no-evidence summary judgment on Redding's statute of limitations defense, asserting that

7

"[she has] no evidence that [appellants] were or should have been aware of [Bettye's] transgressions prior to [her] demise."[5]

Attached to their motion for summary judgment were twenty exhibits. Among the exhibits were copies of various real property records, including warranty deeds, signed by Bettye "individually and as trustee of testamentary [T]rusts A [and] B under the will of C.E. Erwin," or similar form, dated 1996, 1997, 2007, 2013, and 2014. Additionally, appellants attached excerpts from Redding's deposition wherein she stated that "[Bettye] cleaned out all her records[6]" because Bettye didn't want [Redding] to have to deal with that . . . ." Appellants also included Redding's responses to interrogatories in which she indicated that no assets were transferred to either Trust A or Trust B while she was trustee. Finally, appellants attached an inventory and appraisement from Bettye's estate which lists, among other things, a 90.87% interest in King Bowl, Inc, half of which they claimed was to be placed in the trusts in accordance with C.E.'s will.

. On May 7, 2020, Redding filed a response to appellants' motion for summary judgment and an objection to appellants' summary judgment exhibits five, six, and seventeen. The parties therein exchanged multiple responses and replies to each other's motions for summary judgment. Appellants objected to an unsworn declaration provided by Redding in support of her response to the appellants' motion for partial summary judgment. On June 17, 2020, the trial court sustained Redding's objections to appellants'

---

[5] Appellants also sought no-evidence summary judgment on Redding's affirmative defense of estoppel. However, because Redding withdrew her estoppel defense, we do not address it.

[6] The real property records and excerpts of Redding's deposition were also included in appellants' response to Redding's motion for summary judgment.

8

exhibits, overruled appellants' objections to Redding's evidence, granted Redding's motion for summary judgment, and denied appellants' partial motion for summary judgment. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's grant of a motion for summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). "When the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment is sought are meritorious." *Id.* (citing *State v. Ninety Thousand Two Hundred Thirty–Five Dollars & No Cents in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013)). "When both parties move for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all issues presented, and render the judgment the trial court should have." *Id.* (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)).

However, the denial of a cross-motion for summary judgment is reviewable only if that cross-motion sought a disposition of all claims in the trial court. *Houle v. Casillas*, 594 S.W.3d 524, 542 (Tex. App.—El Paso 2019, no pet.); *Fair v. Arp Club Lake, Inc.*, 437 S.W.3d 619, 628 (Tex. App.—Tyler 2014, no pet.) (concluding denial of summary judgment was not reviewable where appellant's cross-motion for partial summary judgment did not seek a final judgment) (citing *In re D.W.G.*, 391 S.W.3d 154, 164 (Tex. App.—San Antonio 2012, no pet.)); *see also Cowboy's Retail & Wholesale Beverage Distrib., LLC v. Davis*, No. 12-14-00085-CV, 2015 WL 6165884, at *3 (Tex. App.—Tyler

9

Oct. 21, 2015, pet. denied) (mem. op.) ("The denial of a cross-motion for summary judgment is reviewable only if that cross-motion sought a disposition of all claims in the trial court."). An order is final when it disposes of all remaining parties and claims. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001). Appellants' motion for partial summary judgment did not seek to dispose of all parties and claims. Therefore, except insofar as they concern the issues raised in Redding's summary judgment motion, we do not address appellants' second issue, in which they argue that the trial court erred in denying their partial summary judgment motion, or their third issue, in which they contend the trial court erred by failing to order an accounting of the trusts pursuant to the request in their petition. *See Houle*, 594 S.W.3d at 542.

"When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Provident Life & Acc. Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The party that moves for traditional summary judgment bears the burden of showing "that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Id.* at 216; TEX. R. CIV. P. 166a(c).

### III. REDDING'S MOTION FOR SUMMARY JUDGMENT

By what we construe as their first issue, appellants argue the trial court erred in granting Redding's motion for summary judgment and order of protection shielding

Redding from providing an accounting based on the applicable statutes of limitations.

## A. Applicable Law

### 1. Statute of Limitations

A party ordinarily may not recover on a claim filed after the applicable limitations period has run on that claim and the affirmative defense is raised. *Little v. Smith*, 943 S.W.2d 414, 417 (Tex. 1997). "Generally, a cause of action accrues when a wrongful act causes a legal injury. The date a cause of action accrues is normally a question of law." *Etan Indus. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011) (per curiam) (citation omitted). The statute of limitations for breaches of fiduciary duty is four years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(5). The statute of limitations for unjust enrichment is two years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *see Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) (per curiam). The statute of limitations for violation of the Texas Theft Liability Act is two years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). The statute of limitations for violations of the Uniform Fraudulent Transfer Act is four years. TEX. BUS. & COM. CODE ANN. § 24.010(a)(1).

There are "two doctrines that may delay accrual or toll limitations: (1) the discovery rule and (2) fraudulent concealment." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). "The discovery rule applies on a categorical basis to injuries that are both inherently undiscoverable and objectively verifiable." *Id.* "When applicable, the discovery rule 'defers the accrual of the cause of action until the injury was or could have been reasonably discovered.'" *Id.* (quoting *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927, 929–30 (Tex. 2011)). For the discovery rule to apply, "the nature of the injury incurred [must

11

be] inherently undiscoverable and the evidence of injury [must be] objectively verifiable." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996) (quoting *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)). "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* at 7. "[A] person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so." *Id.* at 8 (citing *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988)); *see also Slay v. Burnett Tr.*, 187 S.W.2d 377, 394 (Tex. 1945). However, "[w]hile a person to whom a fiduciary duty is owed is relieved of the responsibility of diligent inquiry into the fiduciary's conduct, so long as that relationship exists, when the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship." *S.V.*, 933 S.W.2d at 8.

Fraudulent concealment, on the other hand, "is a fact-specific equitable doctrine that tolls limitations until the fraud is discovered or could have been discovered with reasonable diligence." *Valdez*, 465 S.W.3d at 229. To constitute fraudulent concealment, the "plaintiff must establish an underlying wrong, and that (1) the defendant actually knew the plaintiff was in fact wronged, and (2) concealed that fact to deceive the plaintiff." *Vanderpool v. Vanderpool*, 442 S.W.3d 756, 768 (Tex. App.—Tyler 2014, no pet.). When the actor has a duty to disclose material facts, such as a fiduciary, silence by the fiduciary may be enough to sustain a fraudulent concealment defense to the applicable statute of limitations. *See Brown v. Arenson*, 571 S.W.3d 324, 334–35 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

> When a defendant is under a duty to make a disclosure but conceals the existence of a cause of action from the party to whom it belongs, the

12

defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should reasonably have discovered it.

*Valdez*, 465 S.W.3d at 229–30.

When a fiduciary relationship exists, the fiduciary is under a duty to fully disclose all material facts to the beneficiaries. *Id.* at 230. "Beneficiary" includes any "person for whose benefit property is held in trust, regardless of the nature of the interest." TEX. PROP. CODE ANN. § 111.004(2); *Brown v. Scherck*, 393 S.W.2d 172, 181 (Tex. App.—Corpus Christi–Edinburg 1965, no writ).

Generally, "Texas courts have refused to apply the discovery rule to claims arising out of probate proceedings in most instances . . . even in the face of allegations of fraud." *Little*, 943 S.W.2d at 420. However, the court should look to the conduct forming the genesis of the cause of action to determine the applicable statute of limitations. *See Archer v. Tregellas*, 566 S.W.3d 281, 289 (Tex. 2018).

### 2. Order for Accounting

"A beneficiary by written demand may request the trustee to deliver to each beneficiary of the trust a written statement of accounts covering all transactions since the last accounting or since the creation of the trust, whichever is later." TEX. PROP. CODE ANN. § 113.151(a). However, unless otherwise required by the court, the beneficiary may not demand an accounting more than every twelve months. *Id.* If the trustee either refuses or fails to deliver the accounting, the beneficiary may then file a suit to compel the accounting. *Id.* If the court determines the beneficiary's interest is sufficient to require an accounting, the court may "require the trustee to deliver a written statement of account." *Id.* "In the event the trustee dies prior to the time [they have] rendered an

13

account[ing] . . . the successor trustee or the personal representative of the deceased trustee must render the account for the trust beneficiaries." *Corpus Christi Bank & Tr. v. Roberts*, 587 S.W.2d 173, 181 (Tex. App.—Corpus Christi–Edinburg 1979), *aff'd*, 597 S.W.2d 752 (Tex. 1980).

## B.    Analysis

Subject to certain debts, "if a person dies leaving a lawful will, all of the person's estate that is devised by the will vests immediately in the devisees." TEX. EST. CODE ANN. § 101.001(a)(1). "A person named as a trustee who exercises power or performs duties under the trust is presumed to have accepted the trust . . . ." TEX. PROP. CODE ANN. § 112.009(a). Evidence of Bettye exercising power as trustee is found in the numerous real property documents attached to appellants' partial motion for summary judgment that she executed "individually and as trustee of testamentary [T]rusts A [and] B under the will of C.E. Erwin." *See id.* As such, at least Trust A was funded as a matter of law and there is a presumption that Bettye accepted the trust. *See id.* Redding did not produce any evidence to rebut the presumption. Accordingly, we conclude that, as trustee, Bettye owed fiduciary duties to the remainder beneficiaries. *See id.* § 113.051.

### 1.    Statute of Limitations

In her motion for summary judgment and on appeal, Redding asserts that the limitations period for each of appellants' claims began to run when C.E.'s will was admitted to probate. In support of her argument, she notes that the Texas Supreme Court confirmed both a "legislative concern for the orderly administration of estates and finality

14

of judgments" and a "strong public interest in according finality to probate proceedings."[7] *Valdez*, 465 S.W.3d at 228 (quoting *Little*, 943 S.W.2d at 418–21 ("Texas courts have refused to apply the discovery rule to claims arising out of probate proceedings in most instances, however, even in the face of allegations of fraud.")). However, *Valdez* did not involve the creation, funding, and management of a testamentary trust as is the case here. Rather, it involved an equitable bill of review that was filed more than two years after the heirs learned of malfeasance by a probate clerk and poor accounting by the administrator, which "would cause a reasonably prudent person to make inquiry, which if pursued would lead to the discovery of the concealed cause of action." *See id.* at 232. Appellants' claims do not "arise out of a probate proceeding[,]" but rather out of Bettye's alleged misadministration of the trusts.[8]

Further, Redding misconstrues the accrual date in *Valdez*: the court concluded it began when the heirs *discovered* information that should have led to an inquiry, as opposed to when the will was admitted to probate nearly ten years prior. *Id.* Accordingly, we do not find Redding's arguments persuasive in the present case.

Indeed, none of the cases Redding relies on hold that limitations for causes of action with regard to the administration of a testamentary trust, such as breach of fiduciary duty, begins when a will is admitted to probate. Nor do we find any. Such a holding would lead to an inherently unfair result: a trustee to a testamentary trust could simply wait a

---

[7] In her response to appellants' partial motion for summary judgment and now on appeal, Redding also noted that, to the extent appellants' claims relied on Bettye's failure to provide the annual accounting, they would have had constructive notice of her duty to do so and subsequent failure through the probate proceeding. *See Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981).

[8] We note, for clarity, that "[a] statutory probate court has concurrent jurisdiction with the district court in . . . an action involving [a] . . . testamentary trust . . . ." TEX. EST. CODE ANN. § 32.007(3).

few years from the time the will was probated and engage in various breaches of fiduciary duties and the beneficiaries would be prohibited from recovery, even if the suit was filed the day following the alleged breach. Instead, a claim for breach of fiduciary duty, subject to the discovery rule or fraudulent concealment, accrues when the alleged breach of duty occurred. *See Etan Indus.*, 359 S.W.3d at 623.

In her response to appellants' partial motion for summary judgment and on appeal, Redding argues that the limitations period regarding Bettye's failure to issue statements would begin to run when the first statement should have been issued. *See id.* This is true as to appellants' claims of breach of fiduciary duty as they relate to Bettye's failure to maintain an accounting and issue statements, but alleged misappropriation or mismanagement of trust assets is a breach separate from failing to maintain an accounting. *Compare Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 735 (Tex. App.—Corpus Christi–Edinburg 1994, writ denied) ("A trustee owes a trust beneficiary an unwavering duty of good faith, fair dealing, loyalty and fidelity over the trust's affairs and its corpus.") *with Faulkner v. Bost*, 137 S.W.3d 254, 259 (Tex. App.—Tyler 2004, no pet.) ("A trustee shall maintain a complete and accurate accounting of the administration of the trust."). Bettye's failure to maintain an accounting and provide statements does not excuse further and additional breaches of her fiduciary duties. Thus, Bettye's alleged misappropriation or mismanagement of trust property is the genesis of some of appellants' claims. *See Archer*, 566 S.W.3d at 289. The terms of Trust A prohibited Bettye from invading the corpus of the trust for her own benefit—she was only entitled to the profits generated therein. Based on the fiduciary relationship between Bettye and

16

appellants, we conclude both the discovery rule and fraudulent concealment tolled the statute of limitations as to appellants' claims of Bettye's misappropriation or mismanagement of the trust property. *Valdez*, 465 S.W.3d at 229–30.

Nothing in the record demonstrates that Bettye's alleged misconduct was so apparent that it could not be ignored. *See S.V.*, 933 S.W.2d at 8. Bettye, as trustee, was under a duty to disclose material facts to the beneficiaries. *Valdez*, 465 S.W.3d at 230. We further conclude that appellants, as beneficiaries, were "relieved of the responsibility of diligent inquiry into [Bettye's] conduct" because they were "either unable to inquire into [Bettye]'s actions or unaware of the need to do so." *See S.V.*, 933 S.W.2d at 8. Bettye's act of signing warranty deeds and other real property records as trustee would likely have led the beneficiaries to believe she was acting in good faith as required. *See* TEX. PROP. CODE ANN. § 113.051; *Herschbach*, 883 S.W.2d at 736–37. Absent evidence that appellants were actually aware of Bettye's misconduct, if any, the limitations period did not begin to run on her alleged breaches of fiduciary duties for misappropriating or mismanaging the trust assets until her death, when the beneficiaries would have received the remainder of the trust. *See Valdez*, 465 S.W.3d at 229–30.

Redding, in turn, argues that had appellants requested the accounting in a timely manner, they would have discovered that Bettye treated King Bowl, Inc. as her property, not the trusts', as confirmed by the inventory in her estate showing a 90.87% ownership interest. However, that Bettye would have disclosed her misclassification of the stock ownership is pure speculation. First, Redding, as independent administrator of Bettye's estate, completed and filed the inventory of the estate, which does not conclusively

17

establish that Bettye mischaracterized the ownership of the interest in Kin Bowl, Inc. Indulging every reasonable inference in favor of appellants, it is entirely possible that Bettye destroyed her financial records in an attempt to cover up any malfeasance and would have affirmatively misrepresented the status of the trusts and their property. *See Provident Life & Acc. Ins. Co.*, 128 S.W.3d at 215. As the movant, Redding had the burden to prove that no genuine issue of material fact existed and that she was entitled to judgment as a matter of law. *See id.*; TEX. R. CIV. P. 166a. We conclude she failed to meet that burden. Thus, the trial court erred in granting Redding's motion for summary judgment on appellants' causes of action for breach of fiduciary duty, unjust enrichment, and violations of the theft liability act to the extent they concern Bettye's alleged mishandling or mischaracterization of trust assets.

However, Bettye's failure to provide accounting statements for the trusts was so apparent it could not be ignored. *See S.V.*, 933 S.W.2d at 8. Thus, appellants' claims for breach of fiduciary duties based on Bettye's failure to maintain proper accounting and provide statements are barred by the statute of limitations. *See Valdez*, 465 S.W.3d at 229–30.

Finally, without looking to the merits of appellants' causes of actions against Redding as independent administrator of C.E.'s estate, we conclude that the limitations period has not expired on those claims either.[9] Redding did not become the successor

---

[9] In her brief, Redding argues that appellants did not challenge the dismissal of their claims against her; however, appellants assert that Redding failed to establish the accrual date for *each* of their claims, specifically including their claims against her. Appellants argue dismissing their claims against Redding was inappropriate as they could not have accrued in 1993 because "Peggy was not appointed successor administrator of [C.E.]'s [e]state until 2017 . . . ."

administrator until September 27, 2017, and appellants' first petition was filed on June 1, 2018—well within the applicable limitations periods. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(5) (breach of fiduciary duty); *Elledge*, 240 S.W.3d at 871; TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (unjust enrichment); TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (theft liability act); TEX. BUS. & COM. CODE ANN. § 24.010(a)(1) (fraudulent transfers). Accordingly, claims relating to Redding's misconduct, if any, would not be barred by the statutes of limitations. The trial court erred in granting Redding's motion for summary judgment on appellants' claims against Redding.

### 2. Order for Accounting

In addition to dismissing appellants' claims based on the statutes of limitations, the trial court granted Redding's motion for protective order against being compelled to provide an accounting for the trusts. Although Redding has not been appointed the successor trustee over C.E.'s testamentary trusts, as independent administrator for Bettye's estate, Redding assumes the responsibility of rendering an accounting. *See Corpus Christi Bank & Tr.*, 587 S.W.2d at 181. To the extent that Redding relies on the statute of limitations to shield her from rendering an accounting, she provides no case law, and we find none, that hold that the statute of limitations preventing recovery for breaches of fiduciary duty for failure to render an account prevent beneficiaries from seeking to compel an accounting. *See* TEX. PROP. CODE ANN. § 113.151(a). Accordingly, until a successor trustee is appointed, Redding, as administrator of Bettye's estate, has the duty to render an accounting for the trusts. *See Corpus Christi Bank & Tr.*, 587 S.W.2d at 181. The trial court erred in granting Redding's motion for order of protection against

19

producing an accounting of the trusts.

We overrule appellants' first issue as to any breaches of fiduciary duty by Bettye for failure to maintain and provide trust accounting and sustain it on all other causes of actions against either Bettye or Redding. We sustain appellants' first issue as it relates to the trial court's order of protection preventing appellants from seeking an accounting of the trusts.

## IV. CONCLUSION

We affirm in part and reverse in part the trial court's judgment and remand for further proceedings consistent with this opinion.

CLARISSA SILVA
Justice

Delivered and filed on the
29th day of December, 2021.